# EXHIBIT B

# Complaint to Trans Union, LLC

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

**NEIL F. LETREN**
105 East Mill Avenue
Capital Heights, Maryland 20743

    *on behalf of himself and*
    *all others similarly situated*

    Plaintiff,

v.

**Experian Information Solutions, Inc.**
Serve: Corp Trust Inc.
351 W. Camden Street
Baltimore, Maryland 21201

    Defendant,

**Equifax Information Services, LLC**
Serve: CSC-Lawyers Incorp Srvc Co.
7 Saint Paul Street, Suite 820
Baltimore, Maryland 21202

    Defendant,

**Trans Union, LLC**
Serve: CSC-Lawyers Incorp Srvc Co.
7 Saint Paul Street, Suite 820
Baltimore, Maryland 21202

    Defendant.

Civil Action No. CAL 15-25804

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Neil Letren, on behalf of himself and all others similarly situated, brings this complaint for injunctive relief and damages arising out of the systematic issuance of erroneous credit reports by defendant Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("TransUnion"). Defendants have erroneously reported legally and properly discharged debts of Plaintiff and the Class as due and owing, with consistent and knowing disregard for their rights and defendants' own statutory obligations. Defendants have negligently and willfully failed to

1





employ reasonable procedures—including procedures readily available to it of which it is aware—to ensure maximum possible accuracy of their credit reports. Even after Plaintiff and the Class informed defendants of the falsely reported discharged debts as due and owing, defendants have negligently and willfully failed to consistently and adequately correct the erroneous information.

## PARTIES

1. The plaintiff is a natural person and resides in the State of Maryland.

2. Defendants Experian, Equifax and Trans Union are foreign corporations operating throughout the entire United States, including the State of Maryland. Each is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f) for each is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing consumer reports, as the term is defined in 15 U.S.C. 1681a(d), commonly referred to as Credit Reports, and furnishing these Credit Reports to third parties.

## FACTS

3. Named Plaintiff is among hundreds of thousands of persons throughout the United States who have filed no asset bankruptcies pursuant to Chapter 7 of the U.S. Bankruptcy Code and who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of such no asset bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully challenged by one of his creditors in a related adversary proceeding. Named Plaintiff and the Class are persons for whom such debts have been discharged through bankruptcy.

4. Through computerized court reporting services known as PACER, Defendants directly or indirectly, via third parties, obtain access to each and every discharge order issued by a U.S. Bankruptcy Court in Chapter 7 proceedings. Defendants record those orders in the public records section of its Credit Reports.

5. The diligence that Defendants exercise in recording bankruptcy filings in the Credit Reports of Named Plaintiff and the Class is not replicated in Defendants' reporting of the effect of those orders upon the status of their discharged debts—that is, Defendants grossly over-report as due and owing debts that have been discharged.

6. Defendants are well aware that the effect of a discharge order in a no asset bankruptcy under Chapter 7 is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Information relating to whether a debt has been reaffirmed or successfully challenged is retrievable from PACER through automated, computerized means (just like information establishing the existence of a filed petition for a Chapter 7 no asset bankruptcy, a discharge order granting that petition for a Chapter 7 no asset bankruptcy, a discharge order granting that petition and the date of such discharge). Thus, were Defendants to employ procedures of which it is fully aware, Defendants could achieve close to maximum accuracy in the reporting of the status of discharged debts.

7. Defendants, however, have failed to reasonably use available procedures including, but not limited to services within PACER, to determine which dischargeable debts have, in fact, been discharged and which, if any, remain due and owing on account of their having been reaffirmed or successfully challenged in an adversary proceeding. Instead, Defendants report information regarding pre-bankruptcy debts furnished by consumers'

creditors, even if that information ignores or contradicts information contained in public court records that Defendants have obtained or could easily have obtained through PACER.

8. Defendants know or should know that the Credit Reports they issued regarding Named Plaintiff and the Class are grossly inaccurate with respect to the status of discharged debts. Over the years, Defendants have been sued by consumers seeking damages and other relief based on the same inaccurate reporting procedures that are being challenged here.[1]

9. Defendants, therefore, know or should know that its procedures for reporting the status of pre-bankruptcy debts fail to assure maximum possible accuracy. Despite knowing that its procedures contravene the statutory rights of consumers or in reckless disregard of whether they contravene those rights, Defendants continue to employ inaccurate reporting procedures.

10. Defendants have also failed to fulfill their legal and statutory obligations to reinvestigate and correct the status of the discharged debts they have falsely reported as due and owing. Defendants' practices regarding the reinvestigation of those debts are woefully inadequate.

11. By failing to adopt and maintain reasonable reinvestigation practices for correcting the erroneous information Defendants record in its Credit Reports concerning the status of discharged debts of individuals with court-approved bankruptcy petitions, Defendants have acted in willful and reckless disregard of their rights and obligations under the FCRA.

---

[1] See White v. Experian Info. Solutions, Inc., Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (In a class action settlement the Defendants agreed to update each pre-bankruptcy judgment, tradeline, or Collection Account.

4

12. As a direct consequence of Defendants' grossly inadequate and inaccurate initial reporting, Named Plaintiff and the Class have been effectively denied the fresh start to which they are legally entitled under the U.S. Bankruptcy Code.

13. As a direct consequence of Defendants' grossly inadequate reinvestigation practices and procedures, Named Plaintiff and the Class have been further denied the fresh start to which they are legally entitled under the U.S. Bankruptcy Code.

14. In each case, Named Plaintiff and the Class' credit ratings have been adversely affected by Defendants' erroneous Credit Reports.

## DEFENDANTS' PRODUCTION OF ERRONEOUS CREDIT REPORTS RELATING TO THE NAMED PLAINTIFF

15. Mr. Letren obtained several mortgage loans in 2007, including mortgage loans being reported to his credit reports by Chase, Homeward, PNC, RoundPoint and Wells Fargo.

16. Mr. Letren filed a chapter 7 bankruptcy in 2009.

17. The reported mortgage loans were included in the bankruptcy.

18. On or before January 7th 2011 the mortgage loans were discharged in the bankruptcy.

19. On October 10, 2013 Mr. Letren obtained his Transunion credit report and discovered that the Transunion was erroneously reporting the discharged Chase mortgage account as due and owing. Specifically, Trans Union was reporting the Pay Status as "Account 120 Days Past Due Date" instead of reporting the Pay Status as "Account Included in Bankruptcy." Additionally, the Transunion report indicated that there was a $4,222 per month payment due.

20. Following disputes dated February and August 2014 from Mr. Letren of the Chase mortgage account Transunion continued reporting the Chase mortgage account as 120 days past due with a $4,222 per month payment obligation.

21. On October 23, 2013 Experian issued a credit report that was erroneously reporting the discharged RoundPoint mortgage account as due and owing. Specifically, Experian was reporting the Status as "Open. $22,119 past due" instead of reporting the Status as in bankruptcy. Additionally, the Experian report indicated that there was a recent balance of $52,150 as of Jun 2013 and a monthly payment of $363.

22. Also, Experian was erroneously reporting the discharged Wells Fargo mortgage account as having a Status of "Foreclosure proceedings started. $46,089 past due as of Dec 2008" instead of reporting the account as discharged in bankruptcy. Additionally, the Experian report indicated that there was a recent balance of $529,720 and a monthly payment of $3,841. Ironically, Experian was simultaneously reporting a related -- second mortgage -- Wells Fargo account as "included in Chapter 7 Bankruptcy on Mar 10, 2010."

23. Experian was also reporting a PNC mortgage account as having a "charged off" status and Chase mortgage account with a status of foreclosure. Both the PNC and Chase accounts were opened in 2007 and would have been included in the March 2010 Bankruptcy. In fact a related PNC mortgage account -- 1st mortgage -- was being reported with "Discharged through Bankruptcy Chapter 7" status. Nevertheless, Experian reported the subject PNC mortgage account was a charge off with no indication that it was subject to a bankruptcy discharge. Similarly, the Chase mortgage account was being reported with any indication or reference that it was subject to a bankruptcy discharge.

24. Following a dispute in February 2014 of the Wells Fargo, Chase and PNC accounts, Experian continued reporting the accounts without noting the Bankruptcy.

6

25. In August and September 2014 Plaintiff again disputed the Wells Fargo account in which he pointed out that "[t]he account is incorrectly being reported with a Recent Balance: $529,720 and a Monthly Payment: $3,841" and that the "mortgage account was discharged in bankruptcy and has no balance monthly payment."

26. In November 2013 Equifax furnished credit information to LoanDepot that erroneously listed the discharged RoundPoint mortgage account as due and owing. Specifically, Equifax was reporting the tradeline as having a $52,150 balance, $22,119 past due, $363 monthly payment and M-6 or Delinquent 150 days status. as "Open. $22,119 past due" instead of reporting the Status as in bankruptcy. Additionally, the Equifax report indicated that there was a recent balance of $52,150 as of Jun 2013 and a monthly payment of $363.

27. In June 2014 AnnieMac received an Equifax credit report that listed the discharged Wells Fargo mortgage account as still being due and owing for the $529,720 balance. Likewise, on July 23, 2014 Equifax furnished credit information to BB&T that erroneously listed the discharged Wells Fargo mortgage account as due and owing. Specifically, Equifax reported the tradeline as 180 days past due, $529,720 balance amount, and $3,841 payment amount.[2] Again, in August 2014 Equifax furnished erroneous credit information to Loan Depot that listed the discharged Wells Fargo mortgage account as having a past due balance of $46,089.

28. In addition to reporting the two foregoing Roundpoint and Wells Fargo mortgage accounts, Equifax was also reporting a Homeward Residential mortgage account. without notating that it was subject to the Bankruptcy.

---

[2] Experian and Trans Union was also reporting the Wells Fargo mortgage account in the same manner as Equifax.

7

29. Following the date of his discharge, Mr. Letren's credit rating has been adversely affected by Defendants' erroneous Credit Reports.

30. As noted in the above paragraphs Mr. Letren disputed the information in his report with Experian and Trans Union.

31. Although Mr. Letren had provided Defendants Experian and Trans Union with all information needed to correct the erroneous entries in the Credit Report, and although Defendants already had sufficient information or access to sufficient information to issue an accurate Credit Report, Defendants failed to correct the Credit Report. Instead, Defendants responded by producing a new but still erroneous Credit Report that continued to list the discharged tradelines as due and owing.

32. Following the date he disputed the inaccuracies, Mr. Letren's credit rating has been adversely affected by Defendants Experian's and Trans Union's erroneous Credit Reports.

## CLASS ACTION ALLEGATIONS

33. Plaintiff seeks to maintain this action as a class action representing a class consisting of the following:

> All individuals who, within two years of the filing of this complaint, have had a consumer report prepared by Defendants in which one or more of their tradeline accounts or debts was not reported as discharged despite the fact that such debts had been discharged as a result of their no asset bankruptcy under Chapter 7 of the Bankruptcy Code.

34. *Ascertainability/Numerosity*: The class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria. There are hundreds of thousands of members of the class and, therefore, it would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

35. *Typicality*: The claims of the named plaintiff are typical of the claims of each member of the class he seeks to represent because: (1) they have all been injured in the same manner as a result of Defendants' uniform and woefully inadequate procedure regarding the reporting of debts that have been discharged in bankruptcy; and (2) their claims are all based on the same legal theory.

36. *Adequacy Of Representation*: Plaintiff is an adequate representative of the class he seeks to represent because: (a) he is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (b) his interest is not in any way antagonistic to those of the other class members; and (c) he is represented by experienced and competent counsel.

37. *Commonality*: There are questions of law and fact common to all members of the Class. The overarching questions of law and fact that are common to all members of the class are whether:

(a) in preparing consumer reports concerning individuals whose debts have been discharged in bankruptcy, Defendants have failed to follow reasonable procedures to ensure maximum possible accuracy of the information pertaining to the status of those debts in accordance with the requirements of 15 U.S.C. §1681e(b);

(b) Defendants' failure to comply with the requirements of 15 U.S.C. 1681e(b) is negligent pursuant to 15 U.S.C. §1681o(a); and

(c) Defendants' failure to comply with the requirements of 15 U.S.C. §1681e(b) is negligent pursuant to 15 U.S.C. 1681n(a).

38. *Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(2)*. Class certification of plaintiff's claims is appropriate under Fed. R. Civ. P. 23(b)(2) because

9

Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and final injunctive relief appropriate. Such generally applicable grounds consist of Defendant's systemic deceptive sales tactics and methods aimed at vulnerable AOL email users who have just experienced an unexpected loss of data.

39. *Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(3).* Class certification of plaintiff's claims for willful failure to employ reasonable reporting procedures in violation of 15 U.S.C. 1681e(b) is also appropriate under Fed. R. Civ. P. 23(b)(3). The common questions of law and fact relating to plaintiff's willful violation claims predominate over questions affecting only individual members. Moreover, the class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims. For the vast majority of members of the class, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Further, requiring each class member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

## SUBCLASS ALLEGATIONS

40. Plaintiff also seeks to maintain this action on behalf of a subclass consisting of the following:

> All individuals in the class described in paragraph 32 above whose discharged debts continued to be erroneously reported by Defendants Experian and Trans Union as due and owing any time after 30 days from the date that Defendants had received a dispute letter informing Defendants that those debts had, in fact, been discharged.

41. *Ascertainability/Numerosity:* The subclass is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria.

There are hundreds of thousands of members of the class and, therefore, it would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

42. *Typicality*: The claims of the named plaintiff are typical of the claims of each member of the subclass he seeks to represent because: (1) they have all been injured in the same manner as a result of Defendants' uniform and woefully inadequate procedure regarding the reporting of debts that have been discharged in bankruptcy; and (2) their claims are all based on the same legal theory.

43. *Adequacy Of Representation*: Plaintiff is an adequate representative of the subclass he seeks to represent because: (a) he is willing and able to represent the proposed subclass and has every incentive to pursue this action to a successful conclusion; (b) his interest is not in any way antagonistic to those of the other subclass members; and (c) he is represented by experienced and competent counsel.

44. *Commonality*: There are questions of law and fact common to all members of the subclass. The overarching questions of law and fact that are common to all members of the class are whether:

(a) in responding to dispute letters of individuals who debts have been discharged in bankruptcy, did Defendants violate 15 U.S.C. 1681i(a) by failing to follow reasonable reinvestigation procedures for ascertaining the accuracy of information pertaining to those debts in its credit reports;

(b) Defendants' failure to comply with the requirements of 15 U.S.C. 1681i(a) is negligent pursuant to 15 U.S.C. §1681o(a); and

(c) Defendants' failure to comply with the requirements of 15 U.S.C. §1681i(a) is willful pursuant to 15 U.S.C. 1681n(a).

45. *Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(2).* Class certification of plaintiff's claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the subclass, thereby making declaratory and final injunctive relief appropriate. Such generally applicable grounds consist of Defendants' conduct in failing and refusing to follow reasonable procedures in connection with its erroneous reporting of debts that have been discharged following the issuance of an order approving a consumer's Chapter 7 bankruptcy petition.

46. *Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(3).* Class certification of plaintiff's claims for willful failure to employ reasonable reinvestigation procedures in violation of 15 U.S.C. 1681i(a) is also appropriate under Fed. R. Civ. P. 23(b)(3). The common questions of law and fact relating to plaintiff's willful violation claims predominate over questions affecting only individual members. Moreover, the class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims. For the vast majority of members of the subclass, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Furthermore, requiring each subclass member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

### FIRST CAUSE OF ACTION

***WILLFUL FAILURE TO EMPLOY REASONABLE PROCEDURES TO ENSURE MAXIMUM ACCURACY OF CREDIT REPORTS IN VIOLATION OF 15 U.S.C. 1681e(b)***
.(On behalf of Named Plaintiff and Class Members)

47. The allegations set forth in paragraphs 1 - 46 above are realleged and incorporated by reference as if fully set forth herein.

48. In preparing Credit Reports, Defendants have failed to use reasonable procedures to, as required by law, "assure maximum possible accuracy" of information relating to the discharged debts of Named Plaintiff and the Class, in violation of 15 U.S.C. 1681e(b).

49. As a result of Defendants failure to use reasonable procedures in accordance with the requirements of 15 U.S.C. 1681e(b), Defendants have erroneously reported as due and owing one or more of the discharged debts of Named Plaintiff and member of the Class.

50. Defendants' failure to comply with the requirements of 15 U.S.C. 1681e(b) is willful within the meaning of 15 U.S.C. 1681n(a).

51. As a result of Defendants' willful noncompliance with the requirements of 15 U.S.C. 1681e(b), plaintiff and class members are entitled to statutory and punitive damages under 15 U.S.C. 1681n(a)(1) and (a)(2).

52. As a further result of Defendants' willful noncompliance with the requirements of 15 U.S.C. 1681e(b), Name Plaintiff and the Class have suffered damage to their credit ratings and other actual damages.

## SECOND CAUSE OF ACTION

*NEGLIGENT FAILURE TO EMPLOY REASONABLE PROCEDURES TO ENSURE MAXIMUM ACCURACY OF CREDIT REPORTS IN VIOLATION OF 15 U.S.C. 1681e(b).*
(On behalf of Named Plaintiff and Class Members)

53. The allegations set forth in paragraphs 1 - 52 above are realleged and incorporated by reference as if fully set forth herein.

54. In preparing credit reports relating to Named Plaintiff and Class members, Defendants have failed to follow reasonable procedures to assure maximum accuracy of information it puts in Credit Reports in violation of 15 U.S.C. 1681e(b).

55. As a result of Defendants failure to follow reasonable procedures in accordance with the requirements of 15 U.S.C. 1681e(b), Defendants have erroneously reported one or more of the discharged debts of Named Plaintiff and Class member as due and owing in Credit Reports.

56. Defendants' failure to comply with the requirements of 15 U.S.C. 1681e(b) is negligent within the meaning of 15 U.S.C. 1681o(a).

57. As a result of Defendants' negligent violation with the requirements of 15 U.S.C. 1681e(b), plaintiff and class members have suffered damage to their credit ratings and other actual damages.

### THIRD CAUSE OF ACTION

*WILLFUL FAILURE TO REASONABLY REINVESTIGATE IN VIOLATION OF 15 U.S.C. 1681i(a).*

**(On behalf of Named Plaintiff and All Subclass Members)**

58. The allegations set forth in paragraphs 1 - 57 above are realleged and incorporated by reference as if fully set forth herein.

59. Defendants Experian and Trans Union have failed to use reasonable reinvestigation practices for ascertaining the accuracy of information relating to the discharged debts of Named Plaintiff and Class members that Defendants have erroneously reported as due and owing in Credit Reports.

60. As a result of Defendants failure to conduct reasonable reinvestigations in accordance with the requirements of 15 U.S.C. 1681i(a)(1), Defendants continued to

erroneously report the discharged debts of Named Plaintiff and subclass members, after having been notified that they are disputing that information.

61. Defendants failure to comply with the requirements of 15 U.S.C. 1681i(a) is willful within the meaning of 15 U.S.C. 1681n(a).

62. As a result of Defendants' willful noncompliance with the requirements of 15 U.S.C. 1681i(a), plaintiff and subclass are entitled to statutory and punitive damages under 15 U.S.C. 1681n(a).

63. As a further result of Defendants' willful noncompliance with the requirements of 15 U.S.C. 1681i(a)(1), Named Plaintiff and subclass members have suffered damage to their credit ratings and other actual damages.

## FOURTH CAUSE OF ACTION

### *NEGLIGENT FAILURE TO REASONABLY REINVESTIGATE IN VIOLATION OF 15 U.S.C. 1681i(a).*

### (On behalf of Named Plaintiff and All Subclass Members)

64. The allegations set forth in paragraphs 1 - 63 above are realleged and incorporated by reference as if fully set forth herein.

65. Defendants Experian and Trans Union have failed to use reasonable reinvestigation practices for ascertaining the accuracy of information relating to the discharged debts of Named Plaintiff and Class members that Defendants have listed as due and owing in its credit reports.

66. As a result of Defendants' failure to conduct reasonable reinvestigations in accordance with the requirements of 15 U.S.C. 1681i(a)(1), Defendants have continued to erroneously report the discharged debts of Named Plaintiff and subclass members, after having been notified that they are disputing that information.

67. Defendants' failure to comply with the requirements of 15 U.S.C. 1681i(a)(1) is negligent within the meaning of 15 U.S.C. 1681o(a).

68. As a result of Defendants' negligent noncompliance with the requirements of 15 U.S.C. 1681i(a)(1), plaintiff and subclass members have suffered damage to their credit ratings and other actual damages.

**WHEREFORE**, Plaintiff respectfully prays:

A. That the practices and procedures of Defendants complained of herein be determined and adjudged to be in violation of the rights of Named Plaintiff and Class members under the FCRA;

B. That a permanent injunction be issued requiring Defendants to adopt reporting procedures and reinvestigation practices in accord with the requirements of the FCRA;

C. That the Court enter an Order certifying all of the claims of the Class and Subclass alleged herein pursuant to Fed. R. Civ. P. 23(b)(2) or, in the alternative, certifying the Claims of the Class and Subclass for willful violation of the FCRA under Fed. R. Civ. P. 23(b)(3);

D. That in accordance with 15 U.S.C. 1681n(a) and 1681o(a), judgment be entered in favor of Named Plaintiff and the Class, either individually or class-wide, and against Defendants for statutory and/or punitive damages in amounts to be determined at trial;

E. That in accordance with 15 U.S.C. 1681n(a)(3) and 1681o(a)(2), Named Plaintiff and the Class be awarded the costs of this action together with reasonable attorney's fees as the Court may determine;

F.  That Named Plaintiff and Class members be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem equitable and just.

## DEMAND FOR TRIAL BY JURY

69.  Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demand a trial by jury on all issues so triable.

                                Respectfully submitted,
                                NEIL LETREN

                                Neil Letren, Pro Se
                                105 E. Mill Ave
                                Capitol Heights, MD 20743
                                Tel: (240) 838-6601
                                E-mail: nielletren@msn.com