# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND (GREENBELT)

NEIL F. LETREN, et. al.

              CASE NO.  8:15-cv-03361-PX

    Plaintiff,

 vs.

TRANS UNION, LLC, et. al.

    Defendants.

---

### PLAINTIFF'S OPPOSITION TO TRANS UNION'S
### MOTION FOR SUMMARY JUDGMENT AND
### CROSS-MOTION FOR SUMMARY JUDGEMENT

The Plaintiff, Neil F. Letren ("Letren"), by undersign counsel, opposes Defendant Trans Union, LLC's Motion for Summary Judgment and support thereof states as follows:

### ARGUMENT

**I. Trans Union Reported Inaccurate Information.**

Trans Union inaccurately reported that Plaintiff Letren had a mortgage debt with Chase. Pl's Decl. ¶_. Trans Union's reporting was false because Letren never had a mortgage debt with Chase. Id. ¶_. Therefore, at a minimum, a genuine issue of dispute exists as to whether Trans Union accurately or inaccurately reported that Plaintiff had a mortgage account with Chase. Notably, Trans Union has not provided any admissible evidence that Plaintiff Letren had a mortgage debt with Chase. Because Trans Union has failed to offer any admissible evidence that Plaintiff Letren had a debt to Chase, the Plaintiff is entitled to summary judgment on the issue of inaccuracy.

1

To the extent that the Chase argues that Chase acquired or obtained the American Home Mortgage Acceptance ("AHMA") mortgage account, that mortgage debt was discharged in bankruptcy. *See* Exhibit J (JR000224). Although the AHMA mortgage debt was discharged, Trans Union reported the Chase account without reporting it was discharged in bankruptcy. Pl's Decl. _. Regarding Trans Union's argument that a foreclosed mortgage cannot be discharged in bankruptcy, under District of Columbia law, a foreclosure does not wipe out the debt obligation and the borrower remains liable for the debt. *See* D.C. Code §42-816 (if, upon a sale of the whole mortgaged property, the net proceeds shall be insufficient to pay the mortgage debt, the court may enter a decree in personam against the mortgagor or other party to the suit who is liable for the payment of the mortgage debt for the residue of said debt remaining unsatisfied after applying to said debt the proceeds of such sale).[1]

Trans Union has put forth no evidence to establish that the foreclosure sale satisfied Plaintiff's debt. Therefore, at a minimum, a genuine issue of dispute remains as to whether Plaintiff's debt obligation was satisfied via the foreclosure. It is undisputed that the AHMA mortgage deficiency was included in Plaintiff's Schedule F of the bankruptcy petition and was presumably discharged. Accordingly, there is no genuine issue of dispute that if the Chase account relates to the AHMA account, Trans Union inaccurately reported the Chase account as *not* being in bankruptcy. Therefore, Plaintiff Letren is entitled to summary judgment on the issue of inaccuracy.

## II.    Trans Union's Reporting Procedures Were Unreasonable.

---

[1] *Washington Post*, Lenders seek court actions against homeowners years after foreclosure, June 15, 2013. https://www.washingtonpost.com/investigations/lenders-seek-court-actions-against-homeowners-years-after-foreclosure/2013/06/15/3c6a04ce-96fc-11e2-b68f-dc5c4b47e519_story.html

Plaintiff's evidence of inaccuracy is sufficient for a jury to find Trans Union's reporting procedures were unreasonable. *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984) ("inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures"). It is Trans Union's burden to prove, by a preponderance of evidence, that its procedures were reasonable as a matter of law. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 965 (3d Cir. 1996) ("[O]nce a plaintiff has demonstrated inaccuracies in the report, a defendant could prevail on summary judgment only if it were to produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable.") (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333-34 (9th Cir. 1995); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). To the extent that Trans Union seeks summary judgment on this issue, the motion should be stayed for Plaintiff has not received discovery responses from Trans Union regarding its procedures to report maximum accurate information. Chapple's Decl. _. Moreover, even if Trans Union had provided evidence of reasonable procedures, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond*, 45 F.3d at 1333. On the other hand Trans Union's failure to answer Plaintiff's interrogatory, coupled with its failure to put forth evidence of reasonable procedures in its motion for summary judgment, such a failure entitles Plaintiff to summary judgment.

### A.    Objections To Marianne Litwa Declaration.

In support of Trans Union's motion, Trans Union heavily relies on Marianne Litwa's declaration. Litwa's declaration merely identifies herself as a Specialist 1 for Trans Union and fails to identify an office or division in which she works. She provides no explanation or description of her job duties nor does she state her location of work. This alone is sufficient to

3

strike Litwa's declaration. *See Hernandez v. J.P. Morgan Chase Bank N.A.*, 2016 U.S. Dist. LEXIS 95966, *19 (S.D. Fla. Jul. 22, 2016) (Because the testimony is presented without any context, the Court does not know the source of their apparent knowledge and therefore cannot afford any weight to their statements about the handling of Plaintiff's disputes and Chase's standard procedures.). Nevertheless, she declares not only what Trans Union did with respect to reporting and investigating Plaintiff's credit information, but she goes as far as to declare what actions Chase undertook. Needless to say, her declaration is based upon hearsay, and hearsay upon hearsay as to Chase's action, as she has personal knowledge of none of the events to which declares to. In fact, Litwa does not even declare that she spoke with a Trans Union employee with personal knowledge.

Litwa's declaration simply fails to set out a foundation as to her personal knowledge of the events she declares of. *See* Fed. R. Evid. 602. Rule 56 specifically requires Trans Union declaration "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Litwa's declaration does not contend that she has personal knowledge of Trans Union's reporting and reinvestigations, and certainly not of Chase's conduct, and it does not show she is otherwise competent to testify as to such matters.

Clearly, Litwa's declaration discusses actions and conduct of others of which she has no personal knowledge. *See Souter v. Equifax*, 2014 WL 1379551, at *6 (E.D. Va. Apr. 8, 2014) citing *Sutton v. Roth, LLC*, 361 F. App'x 543, 550 n. 7 (4th Cir. 2010) (noting, in dictum, "that the affidavit [of McDonald's Corporation] is of questionable value because the affiant's 'personal knowledge' is based on a review of files rather than direct, personal knowledge of the underlying facts."). To the extent Litwa purports to be testifying on behalf of Trans Union, her testimony

still lacks personal knowledge and is insufficient to support Trans Union's motion. *See Souter*, *supra* citing *Woods v. Austal, USA, LLC*, 2011 WL 1380054 (S.D. Ala. Apr. 11, 2011) and *Apparel Bus. Systems, LLC v. Tom James Co.*, 2008 WL 858754, at *21 (E.D. Pa. Mar. 28, 2008). Because the declaration "does not bear the hallmark of reliability—personal knowledge," it should be stricken from the record. *Souter*, 2014 WL 1379551, at *7.

### B.    White Settlement Order.

Trans Union relies on the procedures outlined in the White Settlement Order as the standard for determining whether its response was reasonable or not. More particularly, Trans Union argues that it was permitted to report the Chase tradeline as not in bankruptcy if instructed to do so by Chase. As noted above Trans Union has offered *no* admissible evidence that Chase instructed Trans Union to report the account as not in bankruptcy. Moreover, the White Settlement Order only pertains to Plaintiff's dispute in September 2014. The prior disputes claimed that Plaintiff did not have an account with Chase. Therefore, Plaintiff's September 2013 and February 2014 disputes were not governed by the White Settlement Order. As for Plaintiff's dispute in September 2014, the Plaintiff stated "This account is included in my bankruptcy. This account should be reported as discharged in bankruptcy and the status should not be 120 days past due." Pl's Decl. _. Because it was true and verifiable that the account was included in his bankruptcy (or did not belong to Plaintiff), Trans Union could not rely on Chase's reporting following receiving Plaintiff's dispute.

### III.    Trans Union's Reinvestigations Were Unreasonable

As previously noted Trans Union's declarant, Marianne Litwa, has no personal knowledge as to the reinvestigations performed by Trans Union. Because Litwa's declaration is not based on personal knowledge and must be stricken. Without its declaration Trans Union has

no admissible evidence to submit to a jury to find that its reinvestigations were reasonable. Therefore, there is no genuine issue of dispute that Trans Union reinvestigations were not reasonable.

Furthermore, even if Litwa's declaration was admissible, Trans Union again attempts to rely on the White Settlement Order as proof that its reinvestigation procedures were reasonable as a matter of law. As noted previously Plaintiff's disputes, with the exception of the September 2014 dispute, did not pertain to the bankruptcy but instead disputed that Plaintiff had a mortgage debt with Chase. Such a dispute is not governed by the White Settlement Order. And unlike reporting procedures that are governed by *White*, the September 2014 dispute submitted by Plaintiff is not covered by the White Settlement Order. In his September 2014 dispute the Plaintiff argued that his account *should be* reported as in bankruptcy. But the White Settlement Order clearly pertains only to disputes that claim a tradeline *should not* be reported as in bankruptcy.

> If a Consumer submits a non-frivolous/non-irrelevant request for reinvestigation that claims a judgment, tradeline, or Collection Account updated by a Defendant to reflect a discharge pursuant to the procedures in Paragraphs 3.1 or 3.2 should not have been so updated because the judgment, tradeline, or Collection Account had not been discharged in bankruptcy, the Defendant may issue a Consumer Dispute Verification form ("CDV?) or Automated Consumer Dispute Verification (?ACDY') to the relevant furnisher and, upon receiving the furnisher's response to the CDV or ACDV, it may thereafter report information consistent with the information the furnisher provided.

White Settlement Order, Section 3.4(b); and see id. Section 5.5. Clearly, the White Settlement Order pertains to dispute wherein the consumer is requesting that a *bankruptcy notation be removed*. Whereas, in the case at bar the Plaintiff's dispute was requesting that a *bankruptcy notation be added or included*.

**IV.    Plaintiff Letren's Has Adequately Alleged Damages.**

Trans Union argues that the Plaintiff has failed to prove any damages as a consequence of his Trans Union's violations. First, Trans Union argues that Plaintiff has not suffered any denial of credit. But even if this argument had merit, which it does not, it is not dispositive of the issue. *Guimond*, 45 F.3d at 1333 ("[N]o case has held that a denial of credit is a prerequisite to recovery under the FCRA."). Next, Trans Union argues that Plaintiff has not proven he has suffered any emotional distress. This argument has no merit for Plaintiff has submitted evidence that his credit report contained inaccuracies and that he endured emotional distress during the 18 month time period in which he endeavored to correct those errors. *See Banneck v. Hsbc Bank United States*, 2016 U.S. Dist. LEXIS 79980, *27 (N.D. Cal. Jun. 20, 2016) ("Banneck disputed the inaccurate information on the date of his short sale on multiple occasions. The Court cannot at this stage conclude that Banneck's emotional **distress** did not flow **from the dispute resolution process** as a matter of law."); *Robinson v. Equifax*, 560 F.3d 235, 239 (4th Cir. 2009) ("To make matters worse, Robinson had to spend hundreds of hours out of work ***trying to correct*** Equifax's mistakes. The stress of these problems weighed on Robinson and the physical and emotional toll she experienced was apparent to others, particularly her family and co-workers. During this period, Robinson frequently experienced headaches, sleeplessness, skin acne, upset stomach, and hair loss."); *McKeown v. Sears Roebuck & Co.*, 335 F.Supp.2d 917, 933 (W.D. Wis. Jul. 28, 2004) (a consumer may **suffer distress if he has difficulty in correcting his credit history** or trouble managing his finances until his history is corrected; this is true regardless whether his erroneous information was actually published to a third party.); and *see Lee v. Security Check, LLC*, 2010 U.S. Dist. LEXIS 82630, *41-42 (M.D. Fla. Aug. 5, 2010) ("Nevertheless, the record does show that Plaintiff incurred some actual damages in the process

of correcting his credit report. Plaintiff hired FCCW to attempt to resolve the matter with Experian, as well as an attorney to litigate this matter, and lost time from work in the course of the dispute.").

## CONCLUSION

For the foregoing reasons the Plaintiff respectfully requests that Trans Union's motion for summary judgment be denied and Plaintiff Letren's Cross Motion for summary judgment be granted.

Respectfully submitted,

CHAPPLE LAW FIRM

_____
Kevin L. Chapple, Esq., Bar # 19361
438 S Street Northwest
Washington, DC 20001
Tel: (202) 669-4014
E-mail:kevinlchapple@aol.com

*Counsel for Plaintiff*