IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| NEIL F. LETREN, | * |
| on behalf of himself and all others | |
| similarly situated, | * |
| Plaintiff, | |
| | * |
| v. | Civil Action No. PX 15-3361 |
| | * |
| TRANS UNION, LLC, | * |
| Defendant. | * |

******

## MEMORANDUM OPINION

Pending in this Fair Credit Reporting Act ("FCRA") action is Defendant's motion for summary judgment (ECF No. 66) and Plaintiff's partial motion for summary judgment (ECF No. 71). The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendant's motion is granted and Plaintiff's motion is denied.

## I.      BACKGROUND

### A.  Factual Background

Plaintiff Neil F. Letren ("Plaintiff") brings this action against Defendant Trans Union, LLC ("Trans Union" or "Defendant") for its alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Trans Union is a consumer reporting agency ("CRA"), as defined in 15 U.S.C § 1681 a(f)[1] and is subject to FCRA. Joint Statement of Undisputed Facts, ECF No. 68 at 1.

---

[1] "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing

1

According to the Amended Complaint, Plaintiff "obtained several mortgage loans in 2007, including mortgage loans being reported to his credit reports by [JPMorgan] Chase [Bank, N.A.]. . . ." (the "Chase Account"). ECF No. 22 at 5; *see also* ECF No. 22 at 5 (alleging the Trans Union credit report erroneously noted "the discharged Chase mortgage account as due and owing"); ECF No. 22 at 6 ("Both the PNC and Chase accounts were opened in 2007 and would have been included in the March 2010 Bankruptcy.").

In September of 2008, Plaintiff's property was foreclosed upon. ECF No. 78-16 at 2; *see also* ECF No. 78-1 at 40 (listing four foreclosure proceedings). On September 29, 2008, Plaintiff's Trans Union consumer disclosure[2] was updated to reflect the Chase Account as "foreclosure collateral sold." ECF No. 78-4 at 2 (September 8, 2014 Trans Union Consumer Disclosure).

On December 1, 2009, Plaintiff filed for Chapter 7 Bankruptcy. ECF No. 68 at 1; *see also In re: Letren*, Case No. 09-33378, (Bankr. D. Md. Dec. 1, 2009) ("Plaintiff's Bankruptcy Petition"). Plaintiff's bankruptcy petition included a Schedule F of accounts to be discharged in the bankruptcy and provided the names, mailing addresses, and last four digits of the account numbers of all entities holding unsecured claims without priority against the debtor. ECF No. 78-10 at 2; ECF No. 78-1 at 30. The Schedule F listed five accounts, including three mortgage deficiencies from American Home Mortgage Acceptance, Aurora Loan Services, and National City Mortgage. ECF No. 78-1 at 30; ECF No. 78-10 at 2. The Chase Account was not listed on the Schedule F. ECF No. 78-10 at 2.

---

consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U .S.C.A. § 1681a.

[2] A "consumer report" is a report prepared for third parties while a "consumer disclosure" is the consumer reporting agency's file it reveals to the consumer, not a third party. *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) (citing *Spector v. Equifax,* 338 F.Supp.2d 378, 379 (D.Conn. 2004)).

Beginning in March 2010, after Trans Union received notice of Plaintiff's bankruptcy filing, it reported the Chase Account as having been included in bankruptcy. ECF No. 78-15 at 3. On January 27, 2011, the Bankruptcy Court entered an Order of Discharge for Plaintiff's bankruptcy petition. *In re: Letren*, Case No. 09-33378, ECF No. 40 (Bankr. D. Md. Dec. 1, 2009).

In September of 2013, Plaintiff obtained his Trans Union credit file. ECF No. 78-16 at 3. The report showed that the Chase Account had a balance of $0.00 as of October 6, 2008 with former terms of $4,222 due monthly and the status of the account was "CBL: Chapter 7 Bankruptcy." ECF No. 78-15 at 9–11; *see also* ECF No. 78-16 at 3.

On September 16, 2013, Plaintiff submitted a dispute to Trans Union via mail in which he claimed "the [Chase] Account should be deleted from his credit file because Chase could not adequately demonstrate that it was a legal holder of the note." ECF No. 68 at 2; *see also* ECF No. 78-15 at 8; ECF No. 78-16 at 3. Trans Union investigated Plaintiff's claims by contacting Chase through the Automated Consumer Dispute Verification ("ACDV") process, stating that Plaintiff claims he is "not liable for account (i.e. ex-spouse, business)" and asking that they "provide complete ID and ECOA code." ECF No. 78-15 at 3, 8. Chase responded by instructing Trans Union to remove the bankruptcy notations on the Account, and change the status from "account included in bankruptcy" to "120 days past due," as well as the remark from "CBL: Chapter 7 Bankruptcy" to "Foreclosure Collateral Sold." ECF No. 78-15 at 3; ECF No. 78-15 at 9. The investigation results were mailed to Plaintiff on October 10, 2013, and reflected the two changes from Chase. ECF No. 68 at 2; ECF No. 78-16 at 3.

On October 23, 2013, Plaintiff submitted another dispute to Trans Union via mail in which he claimed that the Chase Account was discharged in his 2009 bankruptcy but was not

reporting as such. ECF No. 68 at 2. Plaintiff also requested that Trans Union provide a description of the steps of its investigation. ECF No. 78-16 at 4. Trans Union manually updated the Chase Account to indicate that it was included in Plaintiff's bankruptcy as Plaintiff claimed, changing the status from "account 120 days past due" to "account included in bankruptcy" and the remark from "foreclosure collateral sold" to "Chapter 7 bankruptcy." ECF No. 68 at 2; ECF No. 78-15 at 13. Trans Union sent Plaintiff the results of its investigation on or about October 23, 2013 reflecting these changes, ECF No. 68 at 2, but did not respond to Plaintiff's request for a description of the investigation. ECF No. 78-16 at 4.

On February 19, 2014, Plaintiff again mailed a dispute letter to Trans Union, this time claiming that the Chase Account was a duplicate of his "Homeward mortgage account." ECF No. 68 at 2. On February 19, 2014, Trans Union contacted Chase through the ACDV process, stating that Plaintiff "claims inaccurate information" with his comment "duplicate" and asking that Chase "provide or confirm complete ID and verify account information." ECF No. 78-15 at 4; ECF No. 78-15 at 29. Chase responded again instructing Trans Union to remove the bankruptcy notations on the Account, changing the status back to "120 days past due" and the remark to "foreclosure collateral sold." ECF No. 78-15 at 3–4; *see also* ECF No. 78-15 at 30–31. Trans Union sent Plaintiff the results of its investigation on March 19, 2014 with those changes. ECF No. 68 at 2.

On August 16, 2014, Plaintiff submitted his last dispute to Trans Union online, again claiming that "the Chase Account should be reported as discharged in bankruptcy and the status should not be 120 days past due." ECF No. 68 at 3; ECF No. 78-15 at 4; ECF No. 78-15 at 34. In response to Trans Union's ACDV communication, Chase again verified the Chase Account's

status of "120 days past due" and remark of "foreclosure collateral sold." ECF No. 78-15 at 34-36.

On about September 8, 2014, Plaintiff requested from Trans Union a copy of his consumer disclosure, which Trans Union provided. ECF No. 68 at 3. The consumer disclosure included the Chase Account with a status of "120 days past due," a remark of "foreclosure collateral sold," a $0 balance, and a closed date of September 8, 2008. ECF No. 68 at 3; ECF No. 78-4 at 2. In April 2015, the Chase Account was automatically removed from Plaintiff's credit file because the account had been closed for seven years. ECF No. 78-15 at 4.

According to the Plaintiff, in 2013 and 2014, he applied for and was denied credit from ten financial institutions, including mortgage applications with LoanDepot, Quicken Loans, Fulton Mortgage, BB&T, 1st Step Financial, George Mason Mortgage, Virginia Heritage Bank, and two credit card applications with Barclays Bank and Capital One Bank. ECF No. 78-8 at 32-36. For Plaintiff's credit application to Quicken Loans, Credco was the consumer reporting agency and Experian provided the credit score. ECF No. 78-7 at 2–3. Plaintiff proffers no correspondence for the other nine applications nor any evidence indicating why his credit applications were denied, the consumer reporting agency who furnished the consumer report, or the provider of the credit score. *See* ECF No. 78-8 at 36.

### B.     Procedural Background

On October 6, 2015, Plaintiff filed a complaint in the Circuit Court for Montgomery County against three CRA's—Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union. ECF No. 2. On November 3, 2015, Defendants timely removed the action to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. ECF No. 1.

On December 18, 2015, Plaintiff filed an Amended Complaint, claiming Defendant Trans Union violated 15 U.S.C. § 1681e(b) (Count I and II) and 15 U.S.C. § 1681i(a) (Count III and IV) of the FCRA. ECF No. 22. The claims against two defendants have since been dismissed, and the only remaining defendant is Trans Union. The Amended Complaint alleges Trans Union was inaccurately reporting the Chase Account as due and owing rather than as having been discharged in his 2009 bankruptcy. ECF No. 22 at 5, 8. Plaintiff further averred in the Amended Complaint that when he disputed the Account with Trans Union, Trans Union failed to perform a reasonable investigation and continued to report the Chase Account inaccurately, in violation of the FCRA. ECF No. 22 at 6. Plaintiff seeks statutory and punitive damages, and "a permanent injunction . . . requiring Defendants to adopt reporting procedures and reinvestigation practices in accord with the requirements of the FCRA." ECF No. 22 at 16–17. He also seeks attorney's fees. *Id.*

On January 22, 2016, the Court entered a Scheduling Order, which set discovery deadlines. ECF No. 33 at 4. On January 26, 2016, Trans Union served its requests for admission on Plaintiff. ECF No. 77 at 1. Plaintiff's responses were due on February 29, 2016. *See* Fed. R. Civ. P. 36(a)(3). The parties, however, agreed to extend Plaintiff's deadline by two weeks until March 14, 2016. ECF No. 77 at 1. Plaintiff served his responses to the requests for admission (the "Responses") on or about March 28, 2016, over two weeks past the agreed-upon due date, without ever requesting an additional extension. ECF No. 77 at 1. The Responses were not signed by Plaintiff's counsel. ECF No. 77 at 1.

Defendant filed its motion for summary judgment on July 29, 2016, in part asserting that Plaintiff's untimely responses to Defendant's request for admissions entitled Defendant to summary judgment. ECF No. 66. On August 19, 2016, Plaintiff responded and filed a partial

cross-motion for summary judgment on the issue of inaccuracy, asserting that Trans Union has failed to offer any admissible evidence that Plaintiff owed a debt to Chase. ECF No. 73 at 1–2. On September 6, 2016, Plaintiff requested leave to file a motion to withdraw his admissions. ECF No. 77.

Although Plaintiff filed the Amended Complaint as a putative class action, a class has not been certified, and the only claims before the Court are the individual claims of Plaintiff. Thus, the Court will restrict its decision in this matter to the Plaintiff's individual claims. *See e.g.*, *Boatright v. Aegis Def. Servs., LLC*, 938 F. Supp. 2d 602, 611 (E.D. Va. 2013) (citing *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974–75 (3d Cir. 1992)) ("When the claims of named plaintiffs become no longer justiciable before class certification, the purported class action must be dismissed as moot."); *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. CIV.A. 3:09-0758, 2013 WL 5531855, at *1 (S.D.W. Va. Oct. 4, 2013), *aff'd on other grounds*, 771 F.3d 201 (4th Cir. 2014) (quoting *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1289 (11th Cir. 2001)) ("The district court is not required to resolve Plaintiff's class certification request before resolving a challenge to Plaintiff's individual claim. If the district court were to resolve a summary judgment in Defendants' favor and in so doing dismiss Plaintiff's individual claim before ruling on class certification, then Plaintiff would not be an appropriate class representative." (alterations omitted)); *cf. Grice v. Colvin*, No. GJH-14-1082, 2016 WL 1065806, at *4 (D. Md. Mar. 14, 2016) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)) ("Before a class is certified under Federal Rule of Civil Procedure 23, the class has not obtained legal status independent of the individual named plaintiffs.").

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any

genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

When a court is called upon to decide cross-motions for summary judgment, it must review each motion separately on its own merits to decide whether either party deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Thus, as with any motion for summary judgment, the court must review the facts and reasonable inferences in the light most favorable to the party opposing that motion. *Id.*

### III.    ANALYSIS

### A.    Defendant's Motion for Summary Judgment

#### 1.    Untimely Requests for Admission

Defendant's first rationale for granting summary judgment in its favor hinges on the timeliness of Plaintiff's Responses to Defendant's Requests for Admissions (the "Requests"). As a result of Plaintiff's delay, Defendant argues that the Court should accept as true the facts contained in Defendant's Requests pursuant to Rule 36(a)(3) of the Federal Rules of Civil

Procedure. Rule 36(a)(3) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3); *see also* ECF No. 67 at 7–14.

Specifically, Defendant contends that that the following facts have been admitted as a result of Plaintiff's failure to timely respond to Defendant's Requests:

- Trans Union has not violated any provision of the FCRA with respect to Plaintiff.

- Trans Union followed reasonable procedures to assure maximum possible accuracy of the information Trans Union reported with respect to Plaintiff.

- Trans Union's reinvestigation of Plaintiff's disputes regarding the information Trans Union reported with respect to Plaintiff was reasonable.

- Trans Union never furnished inaccurate information about Plaintiff in a credit report to any third party.

- Trans Union never furnished Plaintiff's credit report to a third party.

- Trans Union did not knowingly, intentionally or recklessly commit any act or omission in conscious disregard for Plaintiff's rights.

- The actions of Trans Union in handling Plaintiff's credit file and in dealing with Plaintiff were not done with the intent to harm Plaintiff.

- Plaintiff was not damaged as a result of any act or omission on the part of Trans Union.

- Plaintiff was not denied credit or had terms changed as a result of the information Trans Union reported with respect to Plaintiff.

- Plaintiff did not suffer any emotional distress, humiliation, embarrassment or mental anguish as a result of Trans Union's conduct.

- Plaintiff did not incur any expenses in connection with medical, spiritual or counseling treatment resulting from the events which form the basis of this litigation.

*See* ECF No. 67 at 7–8. These "admitted" facts, Defendant contends, entitle it to summary judgment.

Prior to determining whether these facts, if admitted, would entitle Defendant to summary judgment, the Court must first decide whether Plaintiff's failure to timely respond to Defendant's Requests or sign belated responses favors the conclusive establishment of these facts against Plaintiff. As an initial matter, Rule 36 does not *require* the Court to treat all facts as admitted when a litigant fails to timely respond to Requests for Admissions or sign belated responses. *Uribe v. Aaron's, Inc.*, No. GJH-14-0022, 2014 WL 4851508, at *3 (D. Md. Sept. 26, 2014); *see also United States v. Turk*, 139 F.R.D. 615, 617–18 (D. Md. 1991) (recognizing that "the sanctions expressed by Federal Rule of Civil Procedure 36(a) are not mandatory" for the court). Indeed, "[t]he Rule expressly provides that this Court *may* shorten or lengthen the time a party is allowed to respond." *Turk*, 139 F.R.D. at 618 (emphasis added); *see also* Fed. R. Civ. P. 36(a)(3) ("[a] shorter or longer time for responding may be stipulated to under Rule 29 *or be ordered by the court*") (emphasis added). As such, the Court may, in its discretion, allow a party more time to file a response to Requests for Admission even though that response might otherwise be untimely. *See e.g.*, *Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir. 1995) (noting that it is within the district court's discretion whether to deem requests as admitted or whether to allow an extension of time to respond); *Turk*, 139 F.R.D. at 618 ("because the district court has the power to allow a longer time, courts and commentators view this to mean that the court, in its discretion, may permit the filing of an answer that would otherwise be untimely") (internal quotation omitted); *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir.

1983) ("Therefore, the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted."); *see also* 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2257 (3d ed. 2016) ("[T]he court can, in its discretion, permit what would otherwise be an untimely answer"). Thus while, "admissions obtained under Rule 36, including matters deemed to be admitted by a party's failure to respond to a request for admissions, can form the basis for granting [s]ummary [j]udgment," *Turk*, 139 F.R.D. at 617 (quoting *Gardner v. Borden, Inc.*, 110 F.R.D. 696, 697 (S.D.W.Va. 1986)) (internal quotation marks omitted), the Court does not believe that, under the circumstances presented here, it would further the interests of justice to deem Plaintiff to have admitted these central facts, given the Fourth Circuit's "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). *See also Pickens v. Equitable Life Assur. Soc. of U.S.*, 413 F.2d 1390, 1393 (5th Cir. 1969) (holding that requests for admissions as to central facts in dispute are beyond the proper scope of the rule that requests not specifically denied or objected to in writing shall be deemed admitted); *Hadra v. Herman Blum Consulting Engineers*, 74 F.R.D. 113, 114 (N.D.Tex. 1977) ("It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed.").

Alternatively, even if Plaintiff's failure to timely respond to Defendant's Requests did somehow result in Plaintiff's admission of the requested facts, Fed. R. Civ. P. 36(b) permits the Court to "withdraw[ ] or amend [ ] [admissions] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b); *see also Webb v. Green Tree Servicing, LLC*, No.–11–2105, 2013 WL 5442423, at *18 (D. Md. Sept. 30, 2013).

Here, withdrawing Plaintiff's admissions would certainly promote the presentation of merits of the action, for otherwise Defendant would be entitled to summary judgment based on the admissions alone. Such a result would be inconsistent with the purpose of Rule 36(b) which "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed. R. Civ. P. 36 Advisory Committee's Note on Rules—1970 Amendment. The Court, therefore, will accept Plaintiff's denial of these Requests as articulated in his September 6, 2016 court filing. *See* ECF No. 77.

### 2. Merits of Defendant's Motion for Summary Judgment

Realizing the importance of maintaining accurate consumer credit files, Congress passed the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). To carry out this purpose, the FCRA includes several enforceable provisions that impose liability if CRAs do not follow reasonable procedures to ensure the accuracy of a consumer report. *See* 15 U.S.C. § 1681e(b). The FCRA also permits consumers to challenge information in a consumer's file that they believe is inaccurate or incomplete. *See* 15 U.S.C. § 1681i.

### a. 15 U.S.C. § 1681e(b)

In Count I and II of the Amended Complaint, Plaintiff claims that Defendant erroneously reported Plaintiff's discharged debt by either willfully or negligently failing to employ reasonable procedures to ensure maximum accuracy of consumer reports in violation of 15 U.S.C. § 1681e(b). ECF No. 22 at 13–14. To prevail on a claim for violation of Section

1681e(b), a plaintiff must prove that: (1) his consumer report contains inaccurate information; (2) the CRA did not follow reasonable procedures to assure maximum possible accuracy of that consumer report; and (3) damages. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *see also Tinsley v. Transunion Corp.*, 879 F. Supp. 550, 552 (D. Md. 1995) ("Plaintiff's case similarly falters on the matter of damages; quite simply, he has shown none"); *Smith v. Auto Mashers, Inc.*, 85 F. Supp. 2d 638, 640–41 (W.D.Va. 2000) (setting forth the elements for a claim under § 1681e(b) as "(1) failure by the reporting agency to follow reasonable procedures to assure the accuracy of its reports; (2) a report which is, in fact, inaccurate; (3) damages to the plaintiff; and (4) proximate cause").

A successful plaintiff can recover both actual and punitive damages for willful violations of the FCRA, 15 U.S.C.A. § 1681n(a), and actual damages for negligent violations, *id.* § 1681o(a). "Actual damages may include not only economic damages, but also damages for humiliation and mental distress." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Johnson v. Dep't of Treasury, IRS*, 700 F.2d 971, 984 (5th Cir. 1983); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834–35 (8th Cir. 1976)).

Trans Union argues that summary judgment is appropriate as to Plaintiff's 15 U.S.C. § 1681e(b) claims because its reports were accurate. It argues further that, even if the information provided was inaccurate, Plaintiff cannot proffer evidence that the reporting of the Chase Account caused any of his alleged credit denials or was a substantial factor in any purported denial of credit. Without a showing that "actual damages" flowed from Trans Union's purported violation, it argues, the claim must be dismissed. ECF No. 67 at 1–2. Finally, Trans Union argues

that it conducted a reasonable investigation, which in and of itself shields Trans Union from liability under the FCRA.[3] The Court addresses each argument in turn.

### (1) Accuracy

Accuracy is a complete defense to a claim brought under § 1681e(b). *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) ("To make out a violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information.") (internal quotations omitted); *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *4 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007) (finding that a showing of inaccurate information is necessary to establish a violation of § 1681e(b)). "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]' effect." *Dalton*, 257 F.3d at 415 (citing *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)).

Defendant contends that the Trans Union file was accurate in reporting the Chase Account as *not* discharged in bankruptcy and with a balance of zero due to the 2008 foreclosure. Defendant specifically points to Plaintiff's Amended Complaint, which expressly states that Plaintiff opened the Chase Account in 2007. ECF No. 22 at 6 ("Both the PNC and Chase accounts were opened in 2007 and would have been included in the March 2010 Bankruptcy."). Further, Defendant highlights that Plaintiff's bankruptcy petition and supporting schedules are devoid of any reference to the Chase Account. ECF No. 78-10 at 2; ECF No. 78-1 at 30; and Plaintiff proffers no evidence that that the Chase Account was discharged in the bankruptcy

---

[3] Alternatively, Defendant contends it is entitled to summary judgment because there is no private right to injunctive relief under the FCRA. ECF No. 67 at 2. Because the Court finds Defendant is entitled to summary judgment on other grounds, it need not address this argument.

proceedings. Thus, Defendant argues, Trans Union accurately reported the status of the Chase Account.

In a transparent about-face, Plaintiff now claims in his June 17, 2016 deposition and September 2016 declaration that he never opened an account with Chase or held a mortgage with Chase, and that the real inaccuracy at issue is reporting the Chase Account at all. ECF No. 78-16 at 3; Deposition of Neil Letren, ECF No. 78-8 at 23. Plaintiff offers no explanation for why he asserted the exact opposite in his Complaint, his Amended Complaint, and throughout the life of this case. This eleventh hour assertion is especially suspect in light of Chase's repeated verifications of the account's existence. Ultimately, Plaintiff's unsupported and bare bones allegations will not defeat summary judgment. *See Angel Med. Ctr., Inc. v. Abernathy*, 1 F. App'x 217, 218 (4th Cir. 2001) (finding plaintiff "presented no evidence of such an accord apart from his own bald and self-serving allegations, which contradict his previous response to an interrogatory and are insufficient to avoid summary judgment") (citing *White v. Boyle,* 538 F.2d 1077, 1080 (4th Cir. 1976)); *Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) ("The appellants are unable to produce any evidence indicating that the repurchase agreements in question create the obligations that they claim . . . [because they] have not produced the repurchase agreements in question. [A] self-serving affidavit describing the content of the repurchase agreements is not enough to defeat [a] motion for summary judgment.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (holding that to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor)).

Plaintiff also misguidedly presses that Trans Union's must show that Plaintiff held a mortgage with Chase. ECF No. 71 at 1 ("Trans Union has failed to offer any admissible evidence

that Plaintiff Letren had a debt to Chase."). Defendant does not bear this burden. Rather, Plaintiff

must show the report is inaccurate. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415

(4th Cir. 2001). That said, Defendant rightfully points to multiple ACDV communications with

Chase which verify that that Plaintiff previously held a Chase mortgage account that ultimately

went into foreclosure. Accordingly, because Plaintiff has generated no genuine issue of disputed

material fact on the issue of accuracy, the Court grants summary judgment to Defendant Trans

Union on Plaintiff's § 1681e(b) claim.

## (2) Causation

Even if the information provided in the Trans Union credit file was inaccurate, Defendant

is alternatively entitled to summary judgment as to Plaintiff's § 1681e(b) claim because Plaintiff

has failed to proffer evidence that Trans Union disclosed an inaccurate consumer report to a third

party. ECF No. 67 at 22–23. Section 1681e(b) provides protection for a consumer where "a

consumer reporting agency prepares a consumer report." *See* 15. U.S.C. § 1681e(b). A consumer

report is further understood to be a "communication . . . for the purpose of serving as a factor in

establishing the consumer's eligibility for' credit or other statutorily enumerated purposes."

*Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *6 (D. Md. Dec. 13, 2016)

(quoting *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004),

*abrogated on other grounds*, *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56 n.8 (2007)

(citing *Renninger v. ChexSystems*, No. 98 C 669, 1998 WL 295497, at *4–5 (N.D. Ill. May 22,

1998))). It follows then that "there cannot be a consumer report without disclosure to a third

party." *Id.*; *accord Wantz*, 386 F.3d at 834 (7th Cir. 2004) ("In short, where there is no evidence

of disclosure to a third party, the plaintiff cannot establish the existence of a consumer

report."); *Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 517 (D. Md. 2009)

("[A] plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b.") (quoting *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000)); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) ("Because a prerequisite to a cause of action under § 1681e(b) is evidence showing that a consumer report was furnished to a third party, all of [plaintiff's] FCRA claims fail as a matter of law.") (citing *Jackson v. Equifax Info. Servs., LLC.*, 167 F. App'x 144, 146 (11th Cir. 2006)); *see generally Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418–19 (4th Cir. 2001) ("On his FCRA claims [plaintiff] need only show that he suffered damages from the false report, regardless of how [the third party] reacted to the report."); *id.* at 415 ("To make out a violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency *prepared a report* containing inaccurate information.") (emphasis added); *cf. Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 205 (E.D. Va. 2015) ("[T]he 'file' actually represents the latent information stored by the CRA, whereas the 'report' represents the prepared document furnished to a third party."). *But see Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("[T]he district court erred in finding that any liability under § 1681e(b) was predicated, as a matter of law, on the occurrence of some event—denial of credit or transmission of the report to third parties—resulting from the compilation and retention of erroneous information.").

That § 1681e(b) requires the report be disclosed makes sense because "if inaccurate information is never disclosed to a third party, the plaintiff cannot claim injury under this section." *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *6 (D. Md. Dec. 13, 2016). More fundamentally, however, the FCRA itself defines "consumer report" as "any

written, oral, or other communication of any information by a consumer reporting agency

bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general

reputation, personal characteristics, or mode of living which is used or expected to be used or

collected in whole or in part for the purpose of serving as a factor in establishing the consumer's

eligibility for," personal credit or insurance purposes, employment purposes, and other

purposes. 15 U.S.C. § 1681a(d)(1). By definition, therefore, the communication made for

purposes of demonstrating employability or creditworthiness, must be made to a third party.

Plaintiff has generated no evidence that Defendant communicated any of this information

to a third party. That Plaintiff asserts he was denied credit from ten financial institutions,

including mortgage applications with Loan Depot, Quicken Loans, Fulton Mortgage, BB&T, 1st

Step Financial, George Mason Mortgage, Virginia Heritage Bank, and two credit card

applications with Barclays Bank and Capital One Bank, does not suffice. ECF No. 78-8 at 32-36;

ECF No. 68 at 3. First and foremost, Plaintiff provides no evidence that the claimed denials were

related at all to Trans Union providing a consumer report to any of the mortgage companies. On

the singular denial for which Plaintiff does marshal evidence, the consumer report at issue is not

from TransUnion but from Credco and includes a credit score from Experian. *See* ECF No. 78-8

at 36. Plaintiff, therefore, cannot sustain his burden of proof on causation under § 1681e(b).

### (3) Reasonableness

Even assuming, *arguendo,* that Trans Union's consumer report for Plaintiff had

inaccuracies, Plaintiff has still failed to demonstrate that a genuine issue of material fact exists

with respect to the reasonableness of its procedures. Whether a CRA has satisfied its duty of care

depends, of course, on the facts of each case and the conduct sufficient within one circumstance

may be insufficient within another. *Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064

AJT/TRJ, 2011 WL 1085874, at *5 (E.D. Va. Mar. 18, 2011); *accord Dalton,* 257 F.3d at 416

(Given the fact intensive nature of these inquiries, "[t]he issue of whether the agency failed to

follow 'reasonable procedures' will be a 'jury question[ ] in the overwhelming majority of

cases.'") (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.

1995)). The implementing regulations for the FCRA clarify that a CRA follows reasonable

procedures if it relies on information from a reputable source unless it has some notice of

systemic problems with the accuracy of its reports. *See* Commentary on the Fair Credit

Reporting Act, 16 C.F.R. pt. 600 app. By carving out a defense for liability under § 1681e(b) for

a CRA that follows "reasonable procedures," Congress manifested its intent not to make CRA's

strictly liable for any inaccuracy on a consumer credit report. The Commentary on the FCRA,

written by the Federal Trade Commission, explains that:

> [w]hether a consumer reporting agency may rely on the accuracy
> of information from a source depends on the circumstances. This
> section does not hold a consumer reporting agency responsible
> where an item of information that it receives from a source that it
> reasonably believes to be reputable appears credible on its face,
> and is transcribed, stored and communicated as provided by that
> source. Requirements are more stringent where the information
> furnished appears implausible or inconsistent, or where procedures
> for furnishing it seem likely to result in inaccuracies, or where the
> consumer reporting agency has had numerous problems regarding
> information from a particular source.

Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600 app. *See, e.g.*, *Henson v. CSC*

*Credit Servs.*, 29 F.3d 280, 285–86 (7th Cir. 1994) ("Requiring credit reporting agencies to look

beyond the face of every court document to find the rare case when a document incorrectly

reports the result of the underlying action would be unduly burdensome and inefficient" in the

absence of a consumer dispute).

However, once the accuracy of information is actually challenged by a consumer, the sufficiency of a CRA's conduct relative to its duty of care will be evaluated under a "balancing test" that weighs the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information. At this juncture, the "balancing test" becomes markedly more favorable to a plaintiff who has disputed the accuracy of the information in his credit report. *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432–33 (4th Cir. 2004) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)); *Henson*, 29 F.3d at 287. In determining whether a plaintiff has carried its burden to create a triable issue of fact with respect to reasonableness, "a plaintiff need only 'minimally present some evidence' of unreasonableness" to avoid summary judgment. *Dalton*, 257 F.3d at 416 (quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)).

Even if the Court were to consider Plaintiff's present characterization of the inaccuracy—that Plaintiff never had a mortgage with Chase and reporting the Chase Account *at all* is the inaccuracy at issue—Plaintiff has failed to demonstrate a genuine issue of material fact concerning the reasonableness of Defendant's procedures under § 1681e(b).[4] Plaintiff complained to Trans Union about the reporting of the Chase Account on several instances. Although these complaints were factually inconsistent (twice contending the account was discharged in bankruptcy, once claiming Chase was not the holder of the note, and once

---

[4] Plaintiff objects to the Declarations of Marianne Litwa, which Trans Union cite to support the argument that its procedure and investigation was reasonable. ECF No. 73 at 4. Plaintiff argues Litwa's declaration simply fails to set out a foundation as to her personal knowledge of the events she declares of pursuant to Fed. R. Evid. 602. The breadth and depth of Litwa's personal knowledge has been demonstrated by her testimony. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). Moreover, Plaintiff's reliance on *Hernandez v. J.P. Morgan Chase Bank N.A.*, No. 14-24254-CIV, 2016 WL 3982496 (S.D. Fla. July 22, 2016), is misguided. The court in *Hernandez* found that the excerpts of deposition testimony of two purported Chase employees should be given no weight because it did not specify who the deponents were, the entity for which they worked, or their job titles. Here, all such contextual information was provided.

contending the account was a duplicate), Trans Union provided all but one consumer comment to Chase. Chase then verified the existence of the account and provided consistent information to Trans Union, which then revised the description of the Chase Account where appropriate. And the only time Trans Union did not consult Chase, it modified the report consistent with Plaintiff's proffered accurate information.

Accordingly, even if Trans Union disclosed the report to a third party, Plaintiff cannot demonstrate that Trans Union failed to follow reasonable procedures to maintain the accuracy of the report. *See Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993) (affirming the district court's grant of summary judgment to the defendants because the plaintiff's "claims are factually unsupported"); *Wilson v. Cargo Group, Inc.*, 518 F.3d 40, 42 (D.C. Cir. 2008) (to succeed on a claim under § 1681e(b), a plaintiff must "minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report) (quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)).[5]

### b.  15 U.S.C. § 1681i

In addition to violations of § 1681e(b), Plaintiff alleges that Trans Union did not fulfill its obligation to conduct a reasonable reinvestigation "for ascertaining the accuracy of information relating to the discharged debts . . . that Defendants have erroneously reported as due and owing in Credit Reports" under 15 U.S.C. § 1681i (Count III and IV). ECF No. 22 at 14–15. Defendant argues that Plaintiff's 15 U.S.C. § 1681i claims fail as matter of law because the Trans Union

---

[5] Defendant also contends it complied with the Settlement Approval Order in the class action *White v. Experian Information Solutions., Inc.*, No. 8:05-cv-01070-DOC-MLG (Approval Order Regarding Settlement Agreement and Release, ECF No. 338 (August 19, 2008)) (available at ECF No. 78-6 and cited in the Amended Complaint at ECF No. 22 at 4, n.1), which sets forth in detail the procedures that CRAs like Trans Union must follow in the context of Chapter 7 bankruptcies, and deems those procedures to be reasonable as a matter of law.

credit file accurately reflects the Chase Account. Alternatively, Defendant argues its reinvestigation process was reasonable.

Turning first to the question of accuracy, the United States Court of Appeals for the Fourth Circuit has not specifically addressed whether Plaintiff must demonstrate inaccuracy of the report to sustain a § 1681i claim. However, several circuits have read into the statute this requirement. In *Carvalho v. Equifax*, 629 F.3d 876, 890 (9th Cir. 2010), the United States Court of Appeals for the Ninth Circuit held that although § 1681i "does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim," demonstrating inaccuracy of the report satisfies the purpose of the FCRA "to protect consumers from the transmission of inaccurate information about them." *Carvalho v. Equifax*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman v. Wolpof & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)). Three other circuits have similarly held. *See DeAndrade v. Tram Union*, 523 F.3d 61, 66–68 (1st Cir. 2008); *Wantz v. Experian Information Servs.*, 386 F.3d 829, 834 (7th Cir. 2004); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

Courts in this District have likewise imposed the same requirement on Plaintiff. *See, e.g.*, *Alston v. Trans Union, LLC*, No. CIV.A. TDC-14-1180, 2014 WL 6388338, at *6 (D. Md. Nov. 13, 2014); *Brooks v. Midland Credit Management*, WDQ–12–1926, 2013 WL 1010455 at *7 (D. Md. Mar. 13, 2013) ("Inaccurate information is an element of a claim under §§ 1681e(a) and 1681i(a)"); *Brown v. Experian*, JKB–12–2048, 2012 WL 6615005 at *3 (D. Md. Dec. 17, 2012) ("In order to state a claim for failure to comply with § 1681e(b), Plaintiff must allege that a consumer report contained inaccurate information. The same is true of § 1681i(a).").

This Court agrees. Plaintiff must marshal evidence to demonstrate the report was inaccurate to sustain a § 1681i reinvestigation claim. In this regard, Plaintiff has provided only

threadbare, self-serving assertions—not evidence of inaccuracy. *See Angel Med. Ctr., Inc. v. Abernathy*, 1 F. App'x 217, 218 (4th Cir. 2001); *White v. Boyle,* 538 F.2d 1077, 1080 (4th Cir. 1976); *Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000). Without more, Plaintiff's § 1681i(a) claim fails as a matter of law.

Alternatively, even if Plaintiff could show that the report he disputed was in fact inaccurate, he has not generated sufficient evidence to show that Trans Union failed to conduct a reasonable reinvestigation.

15 U.S.C. § 1681i provides that:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a *reasonable reinvestigation* to determine whether the disputed information is inaccurate and record the current status of the disputed information . . . . If, after any reinvestigation . . . , an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall . . . promptly delete that item of information from the file of the consumer.

15 U.S.C. § 1681i(a) (emphasis added). To "prevail on a Section 1681i claim, a plaintiff must show (1) that he disputed the accuracy of an item in his or her credit file; (2) the CRA failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the CRA could have uncovered the inaccuracy." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *3 (E.D. Va. Mar. 18, 2011) (citing *Cahlin v. Gen Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)).

The FCRA, however, does not explicitly define what constitutes a reasonable reinvestigation. With respect to an analogous provision of the FCRA, 15 U.S.C. § 1681s–2(b)(1), the Fourth Circuit has opined that to determine reasonableness, "the cost of verifying the

accuracy of the information" should be weighed against "the possible harm of reporting inaccurate information." *See Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 432 (4th Cir. 2004). "Although judging the reasonableness of a CRA's reinvestigation is normally within the province of the factfinder, summary judgment may be appropriate where a plaintiff has failed to adduce evidence that would tend to prove that CRA's reinvestigation was unreasonable." *Jianqing Wu*, 2006 WL 4729755, at *8 (citing *Spitzer v. Trans Union, LLC*, 140 F.Supp.2d 562, 566 (E.D.N.C. 2000) (holding that a CRA did not violate 15 U.S.C. § 1681i as matter of law)); *but see Cushman v. Trans Union Corp.*, 115 F.3d 220, 226–27 (3d Cir. 1997) ("Whatever considerations exist, it is for the 'trier' of fact [to] weigh th[ese] factors in deciding whether [the defendant] violated the provisions of section 1681i.") (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)).

In *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755 (D. Md. May 2, 2006), this Court addressed the finding of reasonable reinvestigation at the summary judgment stage. There, the Court observed that the defendant, Equifax, verified each disputed item by sending customer dispute verification forms to each creditor and then updated Plaintiff's credit file based on the responses to the requests. *Jianqing*, 2006 WL 4729755, at *8. The *Jianqing Wu* plaintiff argued "that Equifax did not consider all relevant information because it did not delete all the items he disputed." *Id.* The Court rejected this argument and found Equifax's reinvestigation procedures were reasonable. *Id.*

The same result follows here. Plaintiff complained to Trans Union about the reporting of the Chase Account on several instances, and with one exception, Trans Union provided these consumer comments to Chase. Chase not only verified the existence of the account but consistently confirmed that it was "120 days past due," a remark of "foreclosure collateral sold,"

24

a $0 balance, and a closed date of September 8, 2008. Trans Union then revised the consumer report accordingly.

Plaintiff's only response is to claim that Trans Union "has not provided any admissible evidence that Plaintiff Letren had a mortgage debt with Chase." ECF No. 73 at 1. Yet, once again, this is not Trans Union's burden. Plaintiff has provided no admissible evidence to sustain his claim, and so summary judgment in favor of Defendant is warranted.

**B.      Plaintiff's Partial Motion for Summary Judgment**

Plaintiff moves for partial summary judgment on the issue of inaccuracy, asserting that Trans Union has failed to offer any admissible evidence that Plaintiff owed a debt to Chase. ECF No. 73 at 1. As previously noted, Plaintiff provides only his self-serving deposition testimony and declaration as evidence of an inaccuracy in his Trans Union credit file. Thus, Plaintiff has not marshaled sufficient evidence to be entitled to summary judgment on this issue.

## IV.    CONCLUSION

The Court finds that the undisputed facts demonstrate the faulty workmanship exclusion applies to Plaintiff's claim and the ensuing loss provision does not reach claimed damage. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. A separate order will follow.


 2/2/2017                                                                     /S/
Date                                        Paula Xinis
                                            United States District Judge