## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND (GREENBELT)

NEIL F. LETREN,
on behalf of himself and all others
similarly situated,
                Plaintiff,

      vs.

EXPERIAN INFORMATION SOLUTIONS, INC.;
EQUIFAX INFORMATION SERVICES, LLC;
and TRANS UNION, LLC;
                Defendants.

CASE NO.  8:15-cv-03361-TDC

## DEFENDANT TRANS UNION, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTIONS FOR:
## ATTORNEYS' FEES AND SANCTIONS PURSUANT TO RULE 11; AND ATTORNEYS' FEES AND SANCTIONS PURSUANT TO 28 U.S.C. § 1927; 15 U.S.C. § 1681 AND THE INHERENT POWERS OF THE COURT

Defendant Trans Union, LLC   ("Trans Union"), by counsel, respectfully submits this Memorandum in support of its Motion For Attorneys' Fees And Sanctions Pursuant To Rule 11 and Motion For Attorneys' Fees And Sanctions Pursuant To 28 U.S.C. § 1927; 15 U.S.C. § 1681 And The Inherent Powers Of The Court  (the "Motions").

As confirmed in the Court's February 2, 2017 Order Granting Trans Union's Motion For Summary Judgment [Doc. No. 82] (the "Order") and Memorandum Opinion in support of same [Doc. No. 81] (the "Memorandum Opinion"), after 15 months of costly litigation and Plaintiff's bad-faith complete change – in the final moments of the lawsuit – of his original false spurious claims to new false spurious claims, Plaintiff failed to present <u>any</u> evidence that credit reporting agency Trans Union violated the Fair Credit Reporting Act ("FCRA") and completely failed to show <u>any</u> entitlement to

damages.  <u>See</u> <u>generally</u> Memorandum Opinion [Doc. No. 81].  Not only was the false and frivolous nature of Plaintiff's claims obvious at the time Plaintiff filed suit against Trans Union, but Trans Union advised Plaintiff and his counsel of such, in detail, at least <u>six</u> times during the litigation, including a Rule 11 Letter, Rule 11 Motion and multiple other requests for dismissal and warnings of Trans Union's intention to seek its fees.

The Motions should be granted and Plaintiff and his counsel ordered to pay Trans Union's attorneys' fees and costs incurred in defending against Plaintiff's false claims, as well as such further sanctions the Court finds justice requires, because it was (or at a minimum should reasonably have been) clear to Plaintiff and his counsel, prior to filing suit – and certainly prior to filing the Amended Complaint – that there was no good faith basis for asserting any claim against Trans Union.  Further, after initiating this frivolous action, Plaintiff and his counsel unreasonably and vexatiously continued it for over a year despite:

A.      Knowing they falsely claimed:

1.      That the Account was discharged in Plaintiff's 2009 bankruptcy, when it wasn't and there was no reference to the Account in Plaintiff's bankruptcy filings;

2.      That Trans Union was wrongly reporting the Account as "due and owing," when the Account was clearly reporting as closed in 2008 with a $0 balance; and

3.      That Plaintiff never had a mortgage debt with Chase, when he did, and completely contradicting the allegations of the Amended Complaint and all of Plaintiff's previous assertions;

B.      Knowing, as this Court later found, Plaintiff could not produce <u>any</u> evidence that Trans Union violated <u>any</u> provision of the FCRA;

C.      Knowing, as this Court later found, Plaintiff did not have <u>any</u> actual damages;

D.      Filing a baseless and impermissible Cross-Motion For Summary Judgment against Trans Union without any evidence in support and knowing he had no hope of succeeding on the merits; and

E.      Being advised by Trans Union of the meritless nature of Plaintiff's claims <u>at least six times</u> and being served with a Rule 11 letter and motion, and each time refusing to voluntarily dismiss the action as required by law.

I.      **<u>STATEMENT OF SUPPORTING FACTS</u>**

A.      **<u>Plaintiff And His Counsel Knew Or Should Have Known From The Time This Case Was Filed That They Lacked Evidentiary Support That Would Demonstrate Any FCRA Violation By Trans Union</u>**

1. **The Complaint**

Although Plaintiff originally pursued his case pro se, he is no stranger to this Court.  Rather, Plaintiff is a serial filer who has litigated a total of 12 lawsuits (8 of which are FCRA cases) in the District of Maryland since 2012, all related to credit reporting or debt collection.  5 such cases were filed while the instant case was pending, and remain open.  See <u>Letren v. NASA Fed. Credit Union</u>, Case No. 8:16-cv-03226-GJH; <u>Letren v. Divin & Service</u>; Case No. 8:16-cv-03504-PJM; <u>Letren v. JP Morgan Chase</u>, Case No. 8:16-cv-03520-PX; <u>Letren v. Aurora Loan Services</u>, Case No. 8:16-cv-03515-TDC; <u>Letren v. PNC Bank</u>, Case No. 8:16-cv-03780-PJM.

Moreover, Plaintiff admitted during his deposition that he was a close personal friend of paralegal – and serial pro se litigant – Thomas Alston, who Plaintiff said often reviews his pleadings for him.  See [Doc. No. 78-8] at 15-16.  Judge Messitte recently noted that there has been a  proliferation of frivolous FCRA cases in the District of Maryland authored by Thomas Alston but "ostensibly filed by pro se plaintiffs seeking monetary compensation for trivial harms," which have been "filed essentially

for the purpose of winning statutory damages, or what is more likely, extracting settlements from defendants." See Alston v. Experian Info. Sols., Inc., No. PJM 15-3558, 2016 U.S. Dist. LEXIS 117939, at **20-21, n. 5 (D. Md. Aug. 31, 2016). Further, Chief Judge Chasanow has found that the Alston family is "engaged in an enterprise of Fair Credit Reporting Act litigation." See Alston v. Creditors Interchange Receivables Mgmt., 2012 U.S. Dist. LEXIS 185736, at *6 (D. Md. Sept. 21, 2012). Plaintiff is apparently a partner in this enterprise, as – in addition to his friendship with Thomas Alston – he has served as a co-Plaintiff with Mr. Alston's sister, Candace Alston, in yet another purported class action against Credit Reporting Agency ("CRA") Experian.[1] See Letren v. Experian Information Solutions, Inc., Case No. 8:14-cv-03957-TDC.

Plaintiff filed his first Class Action Complaint For Damages And Injunctive Relief [Doc. No. 2] (the "Original Complaint") in this matter on October 6, 2015 in Prince George's County, falsely claiming that Trans Union inaccurately reported his Chase mortgage account (the "Account") as due and owing, when it was allegedly discharged in his 2009 bankruptcy. See Original Complaint [Doc. No. 2] at 5, ¶19. The case was removed to this Court on November 3, 2015. [Doc. No. 1]. Attorney Kevin Chapple entered his appearance for Plaintiff on November 16, 2015. See [Doc. No. 12].

### 2.  The Amended Complaint

On November 19, 2015, Equifax Information Services, LLC ("Equifax") filed a Motion To Dismiss the Original Complaint due to Plaintiff's failure to state a cognizable claim. See [Doc. No. 17]. Rather than opposing Equifax's Motion To Dismiss, Plaintiff filed a First Amended Class Action Complaint For Damages And Injunctive Relief on December 18, 2015 [Doc. No. 22] (the "Amended Complaint"). Like in the Original Complaint, Plaintiff again alleged that he opened the Account in

---

[1] Attorney Kevin Chapple is representing Plaintiff in that lawsuit as well.

2007, discharged the Account in his 2009 bankruptcy, and that Trans Union continued to inaccurately report the Account as due and owing, rather than discharged.  See generally id.  Plaintiff went on to falsely claim that when he disputed the Account with Trans Union, Trans Union failed to perform a reasonable investigation and continued to report the Account inaccurately, in violation of the FCRA. See id. at ¶ 20.

Like the Original Complaint, the Amended Complaint was completely frivolous and contained allegations and factual contentions which were not only devoid of evidentiary support, but demonstrably false.  Specifically:

- Though Plaintiff claimed the Account was discharged in his 2009 bankruptcy, it was not and there was no reference to the Account in Plaintiff's bankruptcy filings.  See generally [Doc. No. 78-1]; and

- At the time Plaintiff requested his Trans Union consumer disclosure in September 2014 – his last contact with Trans Union prior to his filing of the Original Complaint – the Account was reporting as closed, with a $0 balance and having been foreclosed upon and sold in September 2008, over a year before Plaintiff filed bankruptcy in December 2009. See Memorandum [Doc. No. 81] at 5.

Therefore, even a cursory initial investigation would have shown that Trans Union's reporting of the Account was entirely accurate.[2]

### 3.  Plaintiff's Deposition

During his June 17, 2016 deposition – six months after filing the Amended Complaint in which he claimed to have opened the Account in 2007 and then falsely claimed he discharged it in his

---

[2] The Account was removed from Plaintiff's credit file in April 2015 due to its age – six months before Plaintiff filed the Original Complaint.  See Memorandum [Doc. No. 81] at 5.

bankruptcy in 2009 – Plaintiff completely changed his story.  Rather than continue to falsely maintain that the Account was included in his bankruptcy, he instead falsely claimed that he <u>never had a mortgage with Chase</u>, and that the "real inaccuracy at issue is reporting the Chase Account at all," in complete contradiction to the Amended Complaint and his statements throughout the course of the litigation.  <u>See</u> Memorandum [Doc. No. 81] at 4; <u>see also</u> [Doc. No. 78-8] at 23.

### B.  Plaintiff And His Counsel Refused To Voluntarily Dismiss The Amended Complaint After Being Placed On Notice, At Least Six Times, That Plaintiff's Claims Were Meritless

The aforementioned fatal flaws in Plaintiff's case should have been obvious to both Plaintiff and his counsel prior to the filing of the Original Complaint as well as the Amended Complaint.  Even a cursory review of the consumer disclosure Plaintiff obtained from Trans Union in September 2014 would have shown Plaintiff and Mr. Chapple that the Account was <u>not</u> reporting as "due and owing," but rather had been <u>closed</u> in September 2008 with a $0 balance.  <u>See id.</u>  A similar cursory review of Plaintiff's bankruptcy filing would have likewise revealed that there was <u>no reference</u> to the Account in any of Plaintiffs' bankruptcy documents.[3]  <u>See id.</u>  Neither Plaintiff nor his counsel, however, ever conducted even a minimal review of the facts supposedly giving rise to Plaintiff's claims (or simply lied about them), let alone the reasonable inquiry required by Federal Rule of Civil Procedure ("Rule") 11.  <u>See</u> Fed. R. Civ. Proc. 11.

Following receipt of the Amended Complaint and several phone conversations with Mr. Chapple regarding the obvious falsity of Plaintiff's allegations, Trans Union counsel made several further attempts to contact Mr. Chapple:

---

[3] The lack of reference to the Account in Plaintiff's bankruptcy documents was logical given that the Account had a $0 balance as of September 2008, and there was therefore no debt to be discharged, a fact which was conveniently ignored by Plaintiff and his counsel.

- <u>January 6, 2016</u>: Trans Union counsel emailed Mr. Chapple noting that – as had been discussed in previous telephone conversations – the Account was not referenced in <u>any</u> of Plaintiff's bankruptcy documents.  In fact, before Trans Union's eventual suppression of the Account in April 2015, it was accurately reporting as having been foreclosed upon and sold – with a $0 balance – in September 2008, over a year before Plaintiff ever filed bankruptcy.  <u>See</u> Correspondence To Kevin Chapple Dated January 6, 2016, attached hereto as Exhibit A.  Trans Union counsel, in an attempt to ensure that this litigation remained civil, went on to state that Trans Union would "be happy to consider" any documentation Mr. Chapple could provide showing that the Account "was in fact included in [his] client's bankruptcy," but that absent such documentation, Trans Union expected Plaintiff to immediately dismiss it from the lawsuit.  <u>See</u> <u>id.</u>

- <u>January 8, 2016</u>:  Mr. Chapple responded by inexplicably falsely claiming – without providing any supporting documentation – that the "foreclosure pertains to the deed of trust, not the note, which is the debt obligation.  The debt, as a deficiency amount was included in the BK."  <u>See</u> Correspondence From Kevin Chapple Dated January 8, 2016, attached hereto as Exhibit B.  Mr. Chapple further falsely claimed that "Trans Union was reporting a monthly obligation, see FAC 19 & 20, which was inaccurate regardless of whether the account was included in bankruptcy."  <u>See</u> <u>id.</u>  Additionally, he falsely stated that "[o]nce discovery ensues the Plaintiff will provide you with any documentation regarding his claims."  <u>See</u> <u>id.</u>

- <u>January 11, 2016</u>:  Trans Union counsel responded, noting that even "if what was included in Plaintiff's bankruptcy was a 'deficiency amount,'" Plaintiff's bankruptcy

documents contained "no reference to <u>any</u> Chase mortgage debt, whether a deficiency amount or otherwise."  <u>See</u> Correspondence To Kevin Chapple Dated January 11, 2016, attached hereto as Exhibit C (emphasis in original).   Trans Union counsel then specifically asked Mr. Chapple to point to where in his client's bankruptcy petition the Account was allegedly included.  <u>See</u> <u>id.</u>  Trans Union counsel further explained that Plaintiff's claim that Trans Union was reporting an ongoing monthly obligation was patently false, because the Trans Union credit reports referenced in the Amended Complaint clearly showed that the Account was reporting with a $0 balance and as having been closed on September 29, 2008.  <u>See</u> <u>id.</u>

- <u>January 28, 2016</u>:  When Mr. Chapple failed to respond to Trans Union's January 11 correspondence, Trans Union counsel contacted him again, reiterating the request that he "point to where in [Plaintiff's] bankruptcy petition this Chase debt was allegedly included," and that he immediately provide the evidence on which he was relying to advance his apparently baseless claims.  <u>See</u> Correspondence To Kevin Chapple Dated January 28, 2016, attached hereto as Exhibit D.  Trans Union counsel also warned that if Plaintiff continued to refuse to provide this evidence or, absent evidence, continued to refuse to dismiss his case against Trans Union, it would seek to recover its fees and expenses from Plaintiff and his counsel.  <u>See</u> <u>id.</u>

After several more unsuccessful attempts, both by phone and by email (all of which received no response), to convince Plaintiff's counsel to dismiss the baseless suit, Trans Union served Plaintiff's counsel with a Motion For Rule 11 Sanctions (the "Rule 11 Motion") on or about March 1, 2016, along with a letter indicating that pursuant to Rule 11's safe harbor provision, Plaintiff had 21 days to

withdraw the Amended Complaint before Trans Union would be permitted to file the Rule 11 Motion with the Court.  <u>See</u> Correspondence to Kevin Chapple Dated March 1, 2016, attached hereto as Exhibit E.  Plaintiff never withdrew the Amended Complaint.

**C.**   <u>**After It Became Clear To Them That The Allegations Of The Amended Complaint Lacked Merit, Plaintiff And His Counsel Changed Their False Theory Of The Case In The Eleventh Hour To An Equally False Frivolous Allegation For Which They Also Lacked Any Evidentiary Support**</u>

In an apparent attempt to save his suit, Plaintiff inexplicably falsely claimed during his June 17, 2016 deposition – six months after filing the Amended Complaint in which he claimed to have opened the Account in 2007 and then falsely claimed he discharged it in his bankruptcy in 2009 – that he <u>never had a mortgage with Chase</u>, and that the "real inaccuracy at issue is reporting the Chase Account at all." <u>See</u> Memorandum [Doc. No. 81] at 4; <u>see also</u> [Doc. No. 78-8] at 23.  After Plaintiff made this false assertion, Trans Union counsel spoke privately with Mr. Chapple, noting that Plaintiff had completely contradicted the allegations of the Amended Complaint, and asked again that Plaintiff dismiss the lawsuit.  <u>See</u> Declaration of Katherine E. Carlton Robinson, attached hereto as Exhibit F.  Mr. Chapple, however, stubbornly refused to do so.  <u>See</u> <u>id.</u>

Mr. Chapple then doubled-down on this spurious new argument, first at a July 12, 2016 Settlement Conference, and then in the Opposition To Trans Union's Motion For Summary Judgment [Doc. No. 71] (the "Opposition"), in which Plaintiff again falsely claimed – in <u>direct</u> <u>contravention</u> of the Amended Complaint and all available evidence – that he "never had a mortgage debt with Chase." <u>See</u> Opposition [Doc. No. 71] at 1.  Even more egregious, Plaintiff attempted to pursue a Cross Motion For Summary Judgment [Doc. No. 71] (the "Cross-Motion For Summary Judgment") based on the spurious contention that "Trans Union has not provided any admissible evidence that Plaintiff Letren had a mortgage debt with Chase." <u>See</u> <u>id.</u>  As this Court noted, however, that was not Trans Union's

burden, especially since Plaintiff had <u>specifically</u> <u>acknowledged</u> his ownership of the Account in his prior pleadings, thereby directly contradicting his new allegations.  <u>See</u> Amended Complaint [Doc. No. 22] at ¶ 15.

**D.    <u>In Entering Summary Judgment In Favor Of Trans Union, The Court Found That Plaintiff Had Produced No Evidence Whatsoever In Support Of His Claims</u>**

On July 29, 2016, Trans Union filed a Motion For Summary Judgment [Doc. No. 66] (the "Summary Judgment Motion") arguing primarily that (1) Trans Union accurately reported the Account, and accuracy is a complete defense to any FCRA claim; (2) Plaintiff could not produce any evidence to suggest that Trans Union's reporting and reinvestigation procedures were unreasonable; and (3) Trans Union was not liable under the FCRA because Plaintiff could not produce the required evidence of damages.  <u>See</u> <u>generally</u> Memorandum [Doc. No. 67].

Plaintiff filed the Opposition and Cross-Motion For Summary Judgment on August 19, 2016, repeating his new bad-faith false claim that he never had a mortgage debt with Chase and renewing his argument that Trans Union's reporting and reinvestigation procedures were unreasonable, but providing no evidence in support of either of those assertions.  <u>See</u> <u>generally</u> Opposition [Doc. No. 71].

This Court granted the Summary Judgment Motion – and denied Plaintiff's Cross-Motion For Summary Judgment – on February 2, 2017, noting that, as previously detailed, Plaintiff had done a "transparent about-face" on his claims.  <u>See</u> Memorandum Opinion [Doc. No. 81] at 20.  This Court also agreed with Trans Union that (1) Plaintiff could not produce <u>any</u> evidence that the Account was reporting inaccurately, thereby dooming his §§ 1681e(b) and 1681i claims; (2) Plaintiff could not produce <u>any</u> evidence of damages because he failed to show that Trans Union ever disclosed his report to a third party, and that the single credit denial letter he produced showed that his credit report was not obtained from Trans Union; (3) Plaintiff failed to demonstrate that there was <u>any</u> issue of fact with

respect to the reasonableness of Trans Union's reporting procedures, and (4) Plaintiff could not show that Trans Union's investigation procedures were unreasonable because Trans Union investigated Plaintiff's disputes by contacting Chase through the Automated Consumer Dispute Verification system, and Chase repeatedly verified the Account's accuracy.[4]  See generally id.

## II.   LEGAL ARGUMENT

### A.   Trans Union Is Entitled To Attorneys' Fees And Costs Jointly And Severally From Plaintiff And Plaintiff's Counsel Pursuant To Federal Rule Of Civil Procedure 11

Federal Rule of Civil Procedure 11 ("Rule 11") requires, in pertinent part:

> (b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law…;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…

Rules 11(b)(3) and 11(c) make it sanctionable to file a claim where the factual contentions have no evidentiary support and where the pleading does not specifically identify that such contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Indeed, Rule 11 imposes a continuing duty to dismiss in such circumstances. See, e.g., Fahrenz v.

---

[4] Though Trans Union also argued that Plaintiff failed to timely respond to Trans Union's Requests For Admission and that the Admissions were therefore deemed admitted and conclusively established as a matter of law, the Court – in the Memorandum Opinion – deemed the Admissions withdrawn and instead decided the case solely on the merits.  See Memorandum Opinion [Doc. No. 81] at 8-12.

Meadow Farm P'ship, 850 F.2d 207, 211 (4th Cir. 1988) (discussing litigants' continuing duty to assess the merits of their case in light of new facts or evidence that becomes available).

The "primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." See Moody v. Arc of Howard Cty., 474 F. App'x 947, 950 (4th Cir. 2012). If the Court determines that Rule 11 has been violated, it has discretion to impose sanctions, including payment of reasonable attorneys' fees and costs, on the attorneys, law firm and party responsible for the violation, in order to "deter repetition of the conduct or comparable conduct by others similarly situated." See Rule 11(c)(4); see also Aldmyr Sys. v. Friedman, No. PJM 15-864, 2016 U.S. Dist. LEXIS 40759, at *74 (D. Md. Mar. 18, 2016).

In considering whether the "signatory had an 'improper purpose' in bringing the suit, the court applies an objective standard of reasonableness to the signatory's conduct." See id. at *49. Such improper purposes may include "to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" See id., at **47-48 (quoting Fed. R. Civ. Proc. 11(b)). The "court considers objective evidence of the attorney's motive, including circumstantial facts related to the filing of the document, in assessing whether the purpose is improper." See id. at *49. Such circumstantial facts indicating an improper purpose include "repeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law." See In re Kunstler, 914 F.2d 505, 519 (4th Cir. 1990).

Further, the "harassing nature of the suit" may be "evidenced by the frivolous nature of the claims," which is tied to the signatory's duty "to conduct a reasonable inquiry into the factual and legal background" of the claims. See Aldmyr, 2016 U.S. Dist. LEXIS 40759, at **55-58. Courts use an "objective test" to determine whether a party or attorney adequately investigated the basis for the claims before filing. See In re Kunstler, 914 F.2d at 519. When "even a cursory investigation of the facts and

relevant law would have revealed to a reasonable attorney that plaintiffs' claims . . . lacked factual and legal support," Rule 11's "reasonableness standard" cannot be met.  See Richmond Fin. Holding Co. v. Richmond, Civil Action No. 89-00336-R, 1990 U.S. Dist. LEXIS 19616, at *7 (E.D. Va. Aug. 14, 1990); see also King v. Wilmington Transit Co., No. 7:96-CV-198-BR(2), 1997 U.S. Dist. LEXIS 16251, at *8 (E.D.N.C. Apr. 28, 1997) (granting the defendant's Motion For Rule 11 Sanctions where the plaintiff continued to pursue his case "notwithstanding [ ] information indicating that plaintiff's claims . . . lacked factual support" and were "objectively unreasonable").

1.   **Plaintiff And His Counsel Failed To Conduct Even A Cursory Investigation Of The Facts Allegedly Giving Rise To The Lawsuit, Instead Put Forth Demonstrably False Allegations And Then Refused To Dismiss When Confronted With The Falsity Of Their Claims.**

In light of the above factors, Plaintiff's counsel's actions in the initiation and continuation of this baseless suit warrant significant sanctions under Rule 11.  Prior to filing the Amended Complaint, Plaintiff's counsel was obligated to perform a reasonable investigation of Plaintiff's claims.  See Rule 11(b).  At best, rather than diligently gathering documentation or otherwise reasonably investigating Plaintiff's allegations, Mr. Chapple chose to blindly file the false allegations in the Amended Complaint. When Trans Union put Mr. Chapple on notice, as early as January 6, 2016, that Plaintiff's allegations were false, Plaintiff and his counsel refused to dismiss and refused to reasonably investigate, much less even consider Trans Union's demonstrably accurate position, and instead declared that they would improperly use discovery to try to find evidence in support of their claims.[5]  See supra at pgs. 5-7.

Further, Plaintiff lacked the required reasonable basis in law and fact to persist in prosecuting his false frivolous claims since Plaintiff had been made aware on multiple occasions (and should have been

---

[5] Likely in an attempt to "extract[ ] settlement[ ]" from Trans Union.  See Alston v. Experian, 2016 U.S. Dist. LEXIS 117939, at **20-21.

aware <u>prior</u> to initiating the lawsuit, as all documents which demonstrate this were available to him), that the Account was <u>not</u> included in Plaintiff's bankruptcy and was <u>not</u> reporting as "due and owing," but rather was reporting as having been closed in September 2008 with a $0 balance.  <u>See supra</u> at pgs. 4-5. Similarly, when it was made clear to Plaintiff and Mr. Chapple that Plaintiff's allegations were false, rather than dismiss, Plaintiff chose to reverse course and falsely allege instead – without any evidence or ever seeking to amend the Amended Complaint – that he never had a mortgage with Chase and that the real inaccuracy was reporting the Account at all.  <u>See supra</u> at pg. 8.  Worse yet, Plaintiff filed a baseless – and improper –  Cross-Motion For Summary Judgment based on his new false allegations, without ever providing any evidence in support of his claims.  <u>See id.</u>  Such varied story-telling of falsehoods, obviously without any evidence in support, demonstrates Plaintiff's intent to harass and only served to prolong this litigation and increase costs.  <u>See</u> Sec. II, A, <u>supra</u>.

    **2.**     **The Harassing And Frivolous Nature Of The Lawsuit Is Further Evidenced By The Litigation History Of Plaintiff And His Counsel.**

Plaintiff's and Mr. Chapple's litigation history further underscores their conduct here:  Plaintiff has litigated eight FCRA lawsuits in the District of Maryland, while his counsel has litigated at least four.  Both therefore have significant "experience in [this] particular area of law," only further demonstrating the improper purpose of their pursuit of this lawsuit.[6]  <u>See</u> <u>In re Kunstler</u>, 914 F.2d at 519.

Courts in the Fourth Circuit have noted that extrinsic evidence of prior bad acts is admissible for purposes of considering a Motion For Rule 11 Sanctions.  <u>See</u> <u>Glucksberg v. Polan</u>, 251 F. Supp. 2d 1294, 1296 (S.D. W. Va. 2003).  As discussed above, Plaintiff is aligned with the Alston family FCRA litigation enterprise, in which paralegal Thomas Alston is assisting plaintiffs to file FCRA lawsuits

---

[6] Mr. Chapple also has a history of being sanctioned for improper conduct.  He was fined $2,000 by the D.C. Office of Campaign Finance in 2009 for "using his official position and office [as Advisory Neighborhood Commissioner] to solicit and receive funds for his limited liability company…"  <u>See</u> Memorandum Opinion And Order of District of Columbia Board of Elections and Ethics, attached hereto as Exhibit F.

"seeking monetary compensation for trivial harms," which are pursued "essentially for the purpose of winning statutory damages, or what is more likely, extracting settlements from defendants." See Alston v. Experian, 2016 U.S. Dist. LEXIS 117939, at **20-21.  Mr. Chapple has also aligned himself with this enterprise, representing members of the Alston family business in at least four other FCRA lawsuits. See Letren v. Experian Information Solutions, Inc., Case No. 8:14-cv-03957-TDC; Alston v. Transunion, LLC et al., Case No. 8:14-cv-01180-TDC; Alston v. Equifax Information Services, LLC et al., Case No. 8:15-cv-03343-TDC; Alston v. Equifax Information Services, LLC, Case No. 8:13-cv-01230.

Because this Court has already noted a pattern of plaintiffs connected to Thomas Alston filing frivolous lawsuits based on little to no damages, see Alston v. Experian, 2016 U.S. Dist. LEXIS 117939, at **20-21, and the Memorandum Opinion made clear that Plaintiff had failed to put forth any evidence of damages attributable to Trans Union (let alone any inaccurate reporting), see Memorandum Opinion [Doc. No. 81] at 16-18, it is fair to conclude that this lawsuit was filed with the improper purpose to extort settlement from Trans Union.  The Motions should therefore be granted, and Plaintiff and his counsel held jointly and severally liable for any sanctions imposed.  See Aldmyr, 2016 U.S. Dist. LEXIS 40759, at *73 (holding counsel and party jointly and severally liable for sanctions under Rule 11); see also Obifuele v. 1300, LLC, No. SKG-04-3839, 2006 U.S. Dist. LEXIS 60043, at *18 (D. Md. Aug. 23, 2006).

**B.**    **Trans Union Is Entitled To Attorneys' Fees And Costs From Plaintiff's Counsel Pursuant to The Federal Vexatious Litigation Statute, 28 U.S.C. §1927**

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings
> in any case unreasonably and vexatiously may be required by the court to

> satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 "focuses on the conduct of the litigation and not on its merits." See Obifuele, 2006 U.S. Dist. LEXIS 60043, at *12. Rather, the "imposition of sanctions [under § 1927] requires a showing of bad faith," which may be either "objective or subjective." See id. at *13. Further, § 1927 imposes a "continuing duty upon attorneys to dismiss claims that are no longer viable." See id.

Plaintiff's counsel unreasonably continued to pursue this lawsuit despite clear notice that Plaintiff's factual claims were false. As noted above, Trans Union counsel contacted Mr. Chapple on numerous occasions requesting dismissal of this baseless lawsuit, in addition to serving the Rule 11 Motion. However, Plaintiff and his counsel stubbornly refused to voluntarily dismiss the claims or provide any evidence supporting them. See supra pgs. 5-7.

Because Plaintiff refused to dismiss this case, Trans Union was forced to file the Summary Judgment Motion. Plaintiff then not only opposed the Summary Judgment Motion, but attempted to file his own Cross-Motion For Summary Judgment, without any support in law or fact, generating further needless costs and expenses for Trans Union in drafting its Reply in Support of the Summary Judgment Motion and requesting leave to file a Motion to Strike Plaintiff's improper Cross-Motion For Summary Judgment. See [Doc. No. 72]. The Opposition failed to provide any evidence in support of an FCRA violation or of Plaintiff's entitlement to damages. See generally [Doc. No. 71]. Likewise, Plaintiff did not put forth any evidence to suggest that he was entitled to summary judgment. See Memorandum Opinion [Doc. No. 81] at 25. This pursuit of claims despite a complete lack of supporting evidence unreasonably and vexatiously multiplied the proceedings.

Each of the issues detailed throughout this brief[7] alone – and certainly taken together – were enough to make it clear to Plaintiff's counsel that Plaintiff's claims were frivolous.  Mr. Chapple's ongoing refusal to dismiss the lawsuit therefore warrants imposition of sanctions under § 1927.  See, e.g., Obifuele, 2006 U.S. Dist. LEXIS 60043, at **17-18 (awarding sanctions pursuant to § 1927 because "as a result of [counsel's] conduct, proceedings in the court have been multiplied to the detriment of the defendant and the court," including forcing defendant to "conduct discovery, draft a motion to compel and motion for sanctions, draft a motion for summary judgment, and attend several court hearings"); Moreno v. PF Hurley, Inc., No. RWT-07-1515, 2009 U.S. Dist. LEXIS 89691, at *5 (D. Md. Sep. 29, 2009).  As such, the Motions should be granted.

### C.   Plaintiff's FCRA Claims Were Brought Without Evidentiary Support And Plaintiff's Refusal To Dismiss This Action Was In Bad Faith Or For Purposes Of Harassment, Requiring Fee Shifting Under FCRA Sections 1681n & 1681o

The FCRA allows for attorneys' fees to be awarded to the prevailing party upon the filing of a pleading, motion or other paper in bad faith, or for the purposes of harassment.  See 15 U.S.C. §§ 1681n(c) and 1681o(b).  Indeed, it has been held that a defendant may recover fees when Plaintiff was aware of the false facts of the pleadings at the time of filing.  See Lewis v. Trans Union, LLC, 2006 U.S. Dist. LEXIS 76242 (N.D. Ill. 2006).

As was previously discussed, it was obvious that the Account was not included in Plaintiff's bankruptcy, and was accurately reporting as closed with a $0 balance, not as "due and owing" as

---

[7] Specifically: (1) Plaintiff repeatedly falsely claimed the Account was discharged in his 2009 bankruptcy, even though it wasn't and there was no reference to the Account in Plaintiff's bankruptcy filings, see supra pg. 5;  (2) Plaintiff repeatedly falsely claimed Trans Union was wrongly reporting the Account as "due and owing," even though, prior to its removal, the Account was clearly reporting as closed in 2008 with a $0 balance, see id.;  (3) At his deposition, Plaintiff falsely completely contradicted the false allegations of the Amended Complaint, putting forth the new theory that he never had a mortgage debt with Chase, see supra pg. 8; and (4) Plaintiff then doubled-down on this theory, filing a baseless Cross-Motion For Summary Judgment.  See supra pg. 9.

Plaintiff falsely claimed.  See supra pg. 5.  Nevertheless, Plaintiff filed and maintained this action against Trans Union falsely claiming otherwise, and proceeded to file an Amended Complaint and Cross-Motion for Summary Judgment all with a lack of any evidentiary support.

In addition to lacking a factual basis, it is clear that the Original Complaint and the Amended Complaint were filed in bad-faith, most likely to extort a settlement from Trans Union.  See supra pg. 14.  As discussed above, both Plaintiff and Mr. Chapple are aligned with the Alston family FCRA litigation enterprise, in which plaintiffs connected to Thomas Alston are filing frivolous lawsuits based on little to no damages in order to extract a settlement from corporate defendants.  See Alston v. Experian, 2016 U.S. Dist. LEXIS 117939, at **20-21.  This lawsuit is just another bad-faith attempt to grow the Alston's FCRA litigation enterprise and obtain unwarranted settlement payments based on little to no cognizable harm.  The Motions should therefore be granted.

**D.      Plaintiff And His Counsel's Conduct In Pursuing A Claim Without Any Support For The Required Elements Of Such Claims Warrants Sanctions Based On The Inherent Powers Of The Court**

Even if there were no specific federal provisions applicable under the facts of this case, there can be no doubt that this Court has the inherent power to issue sanctions against Plaintiff and his counsel for the bad-faith conduct described herein.  Indeed, it is well-settled that "Federal courts possess inherent authority to sanction a litigant for bad-faith behavior and to regulate litigants' behavior."  See Obifuele, 2006 U.S. Dist. LEXIS 60043, at **27-28.  "Pursuant to its inherent powers, a court may impose sanctions against a plaintiff who has pursued a claim that is deemed to have been vexatious, wanton, or made in bad faith."  Davis v. Target Stores Div. Of Dayton Hudson Corp., 87 F.Supp.2d 492, 494 (D. Md. 2000).

The Court has already found that the Alston family and those affiliated with them are filing frivolous lawsuits for the bad-faith purpose of extracting settlements from corporate defendants.  Alston v. Experian, 2016 U.S. Dist. LEXIS 117939, at **20-21.  There is no question that Plaintiff and his counsel are affiliated with this dubious enterprise, see supra pg. 14, and that Plaintiff is in fact continuing these efforts, filing 5 additional lawsuits – most under the FCRA – just since the beginning of the instant matter.  See supra pg. 3.  As it is in the Court's inherent power to impose sanctions in order to "regulate litigants' behavior," such power should be utilized here in order to deter what has clearly become a pattern of vexatious conduct.  See Obifuele, 2006 U.S. Dist. LEXIS 60043, at **27-28.

Further, as this Court found, and as discussed at length in Trans Union counsel's correspondence with Plaintiff's counsel from the earliest stages of this litigation, Plaintiff could not provide any evidence, much less meet his threshold burden of proof, to support his false claim that (untrue) facts showed that Trans Union violated the FCRA; yet Plaintiff persisted with this case.  As such, Trans Union is entitled to an award of costs and fees incurred needlessly in defending Plaintiff's claims, all of which were litigated in bad faith.

## III.  BREAKDOWN OF WORK PERFORMED

From the time Plaintiff filed the Original Complaint in October 2015 to the date of filing the instant Motion, Trans Union counsel has spent a total of 354.25 hours on this case, at a billable rate of $175.75/hour, totaling $62,259.44 in attorneys' fees.  Trans Union counsel is located in Indianapolis, Indiana in which the "customary fee for like work prevailing in the [ ] community," see Local Rule 109.2(b), is roughly $150 to $300 an hour for Federal consumer law.  See e.g., Samuel v. Approved Credit Sols., LLC, No. 115CV00037DMLJMS, 2016 WL 7626219, at 2 (S.D. Ind. Feb. 24, 2016) (finding reasonable rate for Fair Debt Collection Practices Act litigation in Indianapolis to be $275 an

hour for senior attorneys and $175 an hour for lesser experienced attorneys); Pierce v. v. Visteon Corp., No. 1:05-CV-01325-LJM, 2014 WL 941311, at 5 (S.D. Ind. Mar. 11, 2014), aff'd sub nom. Pierce v. Visteon Corp., 791 F.3d 782 (7th Cir. 2015) (finding that the market rate in Indianapolis for associate attorneys working on federal court cases is $200 per hour).   Pursuant to Local Rule 109.2(b), the breakdown of the time spent is as follows:

- Reviewing the Original Complaint, corresponding with Trans Union and gathering information pertaining to same, and preparing response to Original Complaint:  16.25 hours;

- Removing the case to Federal Court, including preparation of removal documents and communicating with Co-Defendants' counsels regarding Co-Defendants' consents to removal: 3 hours;

- Communicating with Plaintiff's counsel, both by phone and email, throughout the course of the litigation concerning the deficiencies of Plaintiff's allegations and assessing his nebulous theories:  11.5 hours;

- Reviewing and responding to the Amended Complaint and reviewing filings of Co-Defendants and Orders of the Court related to same:  3.5 hours;

- Communicating with Co-Defendants' counsels, both by phone and email, regarding a joint defense strategy and evaluating a potential Motion To Transfer Venue due to application of White/Hernandez Class Action Order in Central District of California:  8 hours;

- Preparing and serving Motion For Rule 11 Sanctions and related correspondence to Plaintiff's counsel:  3.5 hours;

- Reviewing Plaintiff's discovery requests to Trans Union and Co-Defendants, preparing Trans Union's responses to Plaintiff's discovery requests and corresponding and conferring with Plaintiff's counsel regarding Trans Union's responses to same: <u>22.25 hours</u>;

- Communicating with Trans Union throughout course of litigation to apprise client of case's status and evaluate next steps, and respond appropriately to Plaintiff's ongoing disputes to Trans Union concerning various accounts not at issue in the litigation: <u>26.75 hours</u>;

- Preparing Initial Joint Status Report and conferring with Co-Defendants' counsels and Plaintiff's counsel regarding their revisions to same: <u>6 hours</u>;

- Preparing for and attending Settlement Conference, including reviewing Orders of the Court related to same and preparing Trans Union's Confidential Settlement Conference Memorandum: <u>28.75 hours</u>;

- Preparing Trans Union's discovery requests to Plaintiff, reviewing his response to same and corresponding with Plaintiff's counsel regarding Plaintiff's need to supplement same: <u>13.25 hours</u>;

- Preparing and serving Trans Union's Motion To Compel Plaintiff's Discovery Responses, including Reply In Support Of Same, and conferring with Plaintiff's counsel on multiple occasions regarding same: <u>29.5 hours</u>;

- Evaluating Trans Union's potential designation of expert witness and corresponding with Co-Defendants' counsels regarding same: <u>2.25 hours</u>;

- Scheduling Plaintiff's deposition with Plaintiff's counsel and Co-Defendants' counsel, preparing Notice of Deposition, preparing for deposition including the compilation of exhibits, and conducting deposition: <u>29.5 hours</u>;

- Preparing Trans Union's Motion For Summary Judgment, Memorandum In Support Of Same, Reply In Support Of Same, and multiple Declarations of Trans Union representatives in support of same;  communicating with Plaintiff's counsel on multiple occasions, both by phone and by email, regarding drafting of Joint Statement Of Facts and compilation of Joint Record Of Exhibits; and preparing Statement of Facts, Joint Record Of Exhibits and Index of same:  82 hours;

- Reviewing Plaintiff's Cross-Motion For Summary Judgment, corresponding with Plaintiff's counsel regarding Trans Union's request that he withdraw same, preparing correspondence to Court regarding same and attending conference with Court and Plaintiff's counsel regarding same:  9 hours;

- Preparing Final Joint Status Report, corresponding with Plaintiff's counsel regarding his revisions to same, and reviewing Orders of Court regarding scheduling of Post-Discovery Status Conference and reassignment of Case:  2.75 hours;

- Communicating with Plaintiff's counsel on multiple occasions, both by phone and by email, regarding his request to extend discovery; attend telephonic Conference with Court and Plaintiff's counsel regarding Plaintiff's request to extend discovery:  9.25 hours;

- Reviewing Court's Order and Memorandum Opinion Granting Trans Union's Motion For Summary Judgment, corresponding with Trans Union regarding same and evaluating potential next steps:  4.75 hours;

- Preparing correspondence to Court requesting leave to file Motion For Sanctions, communicating with Plaintiff's counsel regarding same, attending Telephonic Conference with Court and Plaintiff's counsel regarding Trans Union's Motion For Sanctions, reviewing Court's

Orders related to same; preparing Trans Union's Motion For Sanctions, Memorandum in support of same, Declarations in support of same, exhibits in support of same, and reviewing and summarizing hours billed on each task throughout course of litigation pursuant to Local Rules to note in Trans Union's Memorandum in support of Motion For Sanctions:  <u>38.75 hours</u>.

As noted above, with all of the aforementioned work, Trans Union counsel has spent a total of 354.25 hours on this case, at a billable rate of $175.75/hour, totaling $62,259.44 in attorneys' fees.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Trans Union respectfully requests that this Court enter an Order finding that Trans Union is entitled to an award of reasonable attorneys' fees and expenses incurred in this matter, jointly and severally against Plaintiff and Plaintiff's counsel.


Date:   <u>March 10, 2017</u>

*s/ Robert J. Schuckit*
Robert J. Schuckit, Esq. (MD #14125)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  rschuckit@schuckitlaw.com

*Lead Counsel for Trans Union, LLC*


H. Mark Stichel, Esq.  (MD Federal Bar #02939)
Gohn Hankey Stichel & Berlage, LLP
201 North Charles Street, Suite 2101
Baltimore, MD  21201
Telephone:  (410) 752-9300
Fax:  (410) 752-2519
E-Mail:  hmstichel@ghsllp.com

*Local Counsel for Defendant Trans Union, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **10th day of March, 2017**.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| Kevin L. Chapple, Esq.<br>kevinlchapple@aol.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **10th day of March, 2017**, properly addressed as follows:

| | |
|---|---|
| None | |

/s/ Robert J. Schuckit
Robert J. Schuckit, Esq. (MD Federal Bar #14125)
Katherine Carlton Robinson, Esq. (801872)
(admitted *Pro Hac Vice*)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  (317) 363-2400
Fax:  (317) 363-2257
E-Mail:  rschuckit@schuckitlaw.com
        krobinson@schuckitlaw.com

*Counsel for Defendant Trans Union, LLC*