Dear Judge Xinis,

I deeply appreciate the opportunity to provide a supplemental opposition to Trans Union's Motion for Attorney's Fees against Mr. Letren. I will endeavor to be brief and direct. I understand this Court is frustrated. I sincerely hope the information I provide will clarify the issues and lead this Court to conclude that Mr. Letren should not be sanctioned.

## SUMMARY

Trans Union is asking this Court to sanction Mr. Letren based on findings that: (1) the disputed reporting was in fact accurate; (2) Trans Union's investigation was in fact reasonable; and (3) Mr. Letren's friendship with Thomas Alston and filing of eight FCRA lawsuits is sufficient evidence of bad faith to warrant sanctions. No evidence before this Court supports those findings, and Trans Union's Motion should be denied.

## NO EVIDENCE PROVES THE REPORTING WAS ACCURATE

Trans Union claims "The Account was accurately reported by Trans Union," (ECF 87, ¶5) but has not provided any supporting evidence. *Where are the documents to show that Chase had a legal interest in Mr. Letren's $895,000 loan which originated on 6/26/2007, or that Mr. Letren owed no deficiency after the foreclosure sale and the balance of the loan was $0 on 9/29/2008?* **There are no such documents** before this Court, and without them, this Court has no evidentiary basis to find that the reporting of the Chase account was accurate, nor that the reporting was so clearly accurate that Mr. Letren should be sanctioned for alleging otherwise.

Even if the reporting of the Chase account was accurate, Mr. Letren had a good faith basis to argue that accuracy is not a complete defense to his claims against Trans Union because: (1) the FCRA does not impose a statutory requirement that plaintiffs prove inaccuracy, and (2) the Chase reporting was misleading. There is a good faith basis to argue that the courts should not require a showing of inaccuracy because the statute does not impose this requirement, and it allows CRAs to conduct unreasonable investigations without consequence. Under FRCP Rule 11(b)(2), a party should not be sanctioned when his claims are "warranted … by a non frivolous argument for extending, modifying, or reversing existing law or for establishing new law…"

Additionally, courts have found that technical accuracy is not a complete defense. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). Here, a close examination of Trans Union's reporting reveals that when it reports closed accounts, it employs at least four different combinations of reporting the "pay status" and "terms." (*See* Exhibit 1: Chart of Trans Union's Inconsistent Reporting). The fact that Trans Union inconsistently reports closed accounts creates confusion and is therefore misleading. The majority of closed accounts do not have "terms," and none of the accounts discharged in bankruptcy had terms, which suggests Mr. Letren had a good faith basis to believe that the inclusion of "terms" for the Chase account amounted to reporting that the account was "due and owing." Mr. Letren may have been mistaken, but that does not support a finding that he acted in bad faith.

## TRANS UNION WILLFULLY VIOLATED THE FCRA WHEN IT FAILED TO DESCRIBE ITS INVESTIGATION OF MR. LETREN'S DISPUTE

Trans Union claims Mr. Letren should be sanctioned because he knew he "could not produce any evidence that Trans Union violated any provision of the FCRA." (ECF 88-1, p. 2, ¶B). This statement is demonstrably false. Mr. Letren knew that Trans Union violated the FCRA

by failing to provide him with a description of its investigation after he requested it. *See* 15 U.S.C. §1681i(a)(6)-(7). Mr. Letren sent Trans Union a letter dated 10/18/13 in which he requested: "Please provide me with a description of how the investigations were conducted.." ECF 96-3, TU 000042. There is no dispute that Trans Union received this request. *See* ECF 96-4 TU 000057. To date, Trans Union never provided Mr. Letren with the statutorily required "description of the procedure used to determine the accuracy and completeness of the information," and this is a clear violation of the FCRA. Also, Trans Union did not provide an answer to Interrogatory No. 6, and instead made baseless objections, then referred to a group of documents it produced with no corresponding explanations. *See* ECF 96-1, p. 10 Essentially, Trans Union dumped a bunch of documents on Mr. Letren and said, "Here, figure it out." Trans Union should not be awarded attorney's fees when it blatantly disregarded its statutory duties under the FCRA and did not cooperate in discovery. This Court should also consider that Trans Union's clear, willful violation of the FCRA deprived Mr. Letren of key information. Perhaps if Trans Union had described its investigation, Mr. Letren may have proceeded differently. At this stage, however, speculation is unnecessary. What we know is that the FCRA requires CRAs to provide descriptions of their investigations, and that Trans Union willfully refused to do so.

## **TRANS UNION HAS NOT PROVEN ITS INVESTIGATION WAS REASONABLE**

Trans Union claims it "conducted a reasonable reinvestigation each time it was required to and Plaintiff cannot demonstrate otherwise." (ECF 87, ¶7). This statement is unsupported by any factual evidence and creates a false equivalency. The inability of a Plaintiff to prove a case does not mean the defendant has done no wrong. If Mr. Letren "cannot demonstrate" that Trans Union's reinvestigation was unreasonable, it is because Trans Union has refused to comply with its statutory duty to provide him with a description of its investigation. At the hearing on May 16, this Court asked Trans Union if it "in any of its due diligence verified… that at the time of foreclosure, it was American Home Mortgage as the holder of this note?" Hearing Transcript, 32:18-22. Trans Union responded: "**Absolutely not**." *Id*. at 33:1. This strong statement—that Trans Union made no effort whatsoever to investigate one of the key factual issues related to Mr. Letren's claims—is a clear reflection of Trans Union's mistaken interpretation of its duties to investigate disputes under the FCRA. According to Trans Union, because "[i]t's plaintiff's burden to demonstrate any sort of inaccuracy on the account" during litigation, *Id*., Trans Union's and its attorneys were under no obligation to investigate the facts surrounding Mr. Letren's disputes. *Why should Mr. Letren pay the excessive fees for Trans Union's attorneys who spent hundreds of hours doing everything EXCEPT investigating the facts underlying his case?*

## **TRANS UNION HAS NOT PROVIDED ANY EVIDENCE OF BAD FAITH**

Trans Union's "Statement of Supporting Facts" includes evidence which I object to as irrelevant, and which should not be considered by this Court as evidence of bad faith. Trans Union cites *Glucksberg v. Polan* for the proposition that: "extrinsic evidence of prior bad acts is admissible for purposes of considering a Motion for Rule 11 Sanctions." ECF 88-1, p. 14, ¶2. First, Trans Union's Motion did not request sanctions against Mr. Letren under Rule 11, only under the "inherent powers of the Court" and 15 USC § 1681 (*See* ECF 87, Motion for Sanctions, requesting sanctions against Mr. Chapple only, and ECF 88). Since the Memorandum does not set forth the proper authority, the Motion should be denied as deficient under Local Rule 105.1. Second, friendship is not a "prior bad act," and neither is the filing of lawsuits.

### A. FRIENDSHIP IS NOT A "BAD ACT"

Trans Union cites the fact that Mr. Letren is "friends" with Thomas Alston as evidence of bad faith. ECF 88-1, p. 3, ¶ I-A-1. This argument is unsound, illogical, factually deficient, unsupported by law, and contrary to fundamental legal concepts which underpin our entire legal system. Americans enjoy the right to free association. If a Court of law can impute "bad faith" and penalize a person based simply on the fact that the person is "friends" with an individual who has *possibly* engaged in objectionable behavior, that would violate basic constitutional principles. This Court should not punish Mr. Letren or assume he acted in bad faith simply because he is friends with Thomas Alston and shares an interest in ensuring CRAs comply with their duties to him under the FCRA.

### B. THERE ARE NO FINDINGS OF BAD FAITH AGAINST THOMAS ALSTON

Trans Union failed to cite any negative findings against Thomas Alston. It has only provided dicta from two opinions. Dicta cannot be relied upon because it is not a factual finding based on evidentiary support. Further, Trans Union is encouraging this Court to assume that every person who is a friend, family member, or associate of Thomas Alston should be presumed to be acting in bad faith—the new "Alston Presumption." This argument is outrageous and unsupported by *any* legal principles. This Court should note that the concerns regarding Thomas Alston are that he has engaged in the unauthorized practice of law, NOT that the cases he is associated with are frivolous. Judge Messitte was concerned that "Thomas Alston…. appears … to have been the author-in-fact of several of these *pro se* Alston-Plaintiff suits." *Alston v. Experian Info. Sols., Inc.*, CV PJM 15-3558, 2016 WL 4555056, at *7 (D. Md. Aug. 31, 2016). Contrary to Trans Union's claims, the court made no statement about "frivolous" claims. The unsubstantiated suspicion that Mr. Alston engaged in the unauthorized practice of law does not impute any bad faith on any of the plaintiffs whom he allegedly helped. There is no crime for the "unauthorized acceptance of help from a non-lawyer."

### C. THE NUMBER OF LAWSUITS FILED IS NOT EVIDENCE OF BAD FAITH

Trans Union encourages this Court to adopt its unfounded conclusion that because the "Plaintiff has litigated eight FCRA lawsuits," that "demonstrat[es] the improper purpose of [his] pursuit of this lawsuit." ECF 88-1, p. 14, ¶2. This argument *must* fail. The number of lawsuits filed by any person, by itself, *cannot* be considered as evidence of bad faith or improper purpose. A person could easily have dozens of valid lawsuits and legal grievances. The number of lawsuits could demonstrate that a person is highly aware of their legal rights, or that they are part of a vulnerable population that has been repeatedly victimized by a failing system. In this case, there is nothing more than speculation being articulated.

Importantly, NO court has sanctioned Mr. Letren or made any factual findings that Mr. Letren filed any of his lawsuits in bad faith. None of Mr. Letren's cases went to trial where he lost. There is nothing Trans Union can cite in any of Mr. Letren's other FCRA lawsuits that implies bad faith. The fact that Mr. Letren has "litigated eight FCRA lawsuits" is not relevant to this Motion and should not be considered by this Court. I strongly object to the characterization of Mr. Letren as a "serial filer" because it has no legal definition, and the fact that it sounds strikingly similar to "serial killer" makes it highly inflammatory. Without any actual evidence that Mr. Letren has acted in bad faith, Trans Union has resorted to name-calling. This Court should demand substantive arguments supported by law, and should reject Trans Union's

attempts to cast dispersions on a person simply because he is aware of his rights and has sought compensation when he reasonably believes he has been harmed.

Further, if this Court considers Mr. Letren's other cases, it should consider Trans Union's other cases as well. It has been proven that Trans Union is a "serial violator" of the FCRA. *See Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F. Supp. 2d 452, 467 (E.D. Va. 2010) ("Trans Union had been warned repeatedly that its reinvestigation obligation in verifying a disputed account requires more than parroting the original source's response. Nevertheless, it continues to ignore these judicial edicts and refuses to change the way it does business…there is no doubt that …Trans Union is a frequent offender of the FCRA."). *See also Cushman v. Trans Union*, 115 F. 3d 220 (3rd Cir. 1997); *Mullins v. Trans Union*, 3:05cv888, 2007 U.S. Dist LEXIS 62912 (E.D. Va.); *Ramirez v. Trans Union*, Case No. 12-cv-00632-JSC (N.D. Cal.).

### MR. LETREN HAD A GOOD FAITH LEGAL BASIS FOR HIS CLAIMS

The legal basis for Mr. Letren's claim that the Chase account should be reported as being discharged in bankruptcy is the White/Herndnadez Class Action Order, in which the court approved the class-action settlement in which Trans Union agreed that: "Pre-bankruptcy tradelines…shall be treated as follows: …where the Last Reported Status of the tradeline in the File is a Major Derogatory status [foreclosure…or any account rating or status of late by 120 days or more], the Defendant shall apply the Agreed Bankruptcy Coding… 'Agreed Bankruptcy Coding' means the Defendant shall code the tradeline … to indicate that the account is discharged in the Consumer's Chapter 7 bankruptcy…" ("White Settlement Order", ECF 78-6, p. 15-16, ¶¶2.2 & 3.1(b)). The White Settlement Order provided Mr. Letren with the good faith belief that accounts he opened prior to his bankruptcy should be reported as "discharged in bankruptcy," with no past due status or foreclosure on the tradeline. Based on this understanding, Mr. Letren disputed his pre-bankruptcy accounts which were not reported as "discharged in bankruptcy." In his Amended Complaint, Mr. Letren made substantially similar allegations against Experian, Equifax and Trans Union regarding the inaccurate reporting of accounts that should have been reported as discharged in bankruptcy, showing a consistent reliance on his understanding of the White Settlement. *See* ECF 22, ¶¶21, 23, 26, 28. Both Equifax and Experian were represented by counsel, and both reached settlements with Mr. Letren. These settlements gave Mr. Letren the good faith believe that he was correct in his belief that the law required that his pre-bankruptcy accounts, including Chase, be reported as discharged in bankruptcy. When a plaintiff obtains settlements from 2 defendants based on the same theory, that provides a good faith basis to pursue a third defendant on the same successful theory.

### MR. LETREN HAD A GOOD FAITH FACTUAL BASIS FOR HIS DISPUTE

The primary bases for Trans Union's Motion for Sanctions are its claims that: (1) the Account was *not* discharged in bankruptcy and (2) Plaintiff had a mortgage debt with Chase. (ECF 88-1, p. 2, ¶A). Trans Union failed to provide *any* evidence to support these statements, therefore its Motion should be denied.

 (i) **Documentary Evidence Shows The Account Was Discharged In Bankruptcy**

Trans Union reported the Chase mortgage account as having been opened on 6/26/2007 for the original amount of $895,000. ECF 78-17. The Deed of Trust for Mr. Letren's property at 10 R Street NE, DC shows that Mr. Letren signed a promissory note for $895,000 on 6/26/2007

with AHMA. ("Deed of Trust," Exhibit 2). Mr. Letren's bankruptcy shows that the AHMA mortgage for 10 R Street was listed and discharged on Schedule F. These documents establish that the mortgage Chase was reporting derived from the AHMA mortgage, which was discharged in bankruptcy.  Additionally, a search in the Mortgage Electronic Registration System (MERS) using the Identification Number on the Deed of Trust reveals Chase was the loan servicer.

The record reveals that Trans Union's attorneys began asking Mr. Chapple in early 2016 to explain why Mr. Letren alleged the Chase account was discharged in bankruptcy. If we believe Mr. Chapple, he researched the public records before filing the Amended Complaint on December 18, 2015, he saw the Deed of Trust which established the crucial connection, and he knew the answer to Trans Union's question. Yet, Mr. Chapple provides us with no explanation why he did not simply explain this point to Trans Union when asked, or why he produced the Deed of Trust for the first time at the hearing on May 16, 2017.  The real problem here is not that Mr. Letren had no good faith basis for his claims, it is that his attorney failed to timely show the defendant and the Court what those factual bases were.  Now that the relevant documents are before this Court, it should be clear that Mr. Letren was not acting in bad faith when he claimed that the Chase mortgage showing on his Trans Union report—the loan for $895,000 taken on 6/26/07—was discharged in bankruptcy. Sanctions are not a fee-shifting measure, and Mr. Letren should not be sanctioned for having lost the summary judgment motion.

**(ii)  Evidence Suggests There Was a Deficiency to Be Discharged**

The bankruptcy attorney who represented Mr. Letren included the AHMA loan on Schedule F. Without any evidence that the bankruptcy attorney acted improperly, it is reasonable for this Court to consider the inclusion of the AHMA account on the bankruptcy as evidence that there was a good faith basis for Mr. Letren to believe there was a deficiency amount. Additionally, the Deed of Trust provides that after the note is satisfied, the Deed of Trust is supposed to be released, and the release is to be recorded. (DOT, p. 13, ¶23) Here, neither action was taken. There is no release in the public records, and the absence of the documents one would expect to see after a note is "fully" paid off is evidence that it was not paid off.

**(iii)  There is No Evidence Mr. Letren Had a Separate Mortgage Debt With Chase**

Trans Union claims that Mr. Letren's allegation that "Both the PNC and Chase accounts were opened in 2007 and would have been included in the March 2010 Bankruptcy" (ECF 22, ¶23) should be construed as an admission that he opened a mortgage with Chase in 2007.  *See* ECF 88-1, p. 4-5, ¶2. However, it is improper to analyze this statement in isolation.  Mr. Letren first alleged that he "obtained several mortgage loans in 2007, including mortgage loans *being reported to his credit reports by* Chase, Homeward, PNC, RoundPoint and Wells Fargo."  FAC, ECF 22, ¶15 (emphasis added).  Thus, any reference to the "Chase account" should be understood as the account "being reported by" Chase, not a mortgage which originated with Chase. Additionally, this statement is contained within a paragraph which clearly intended to convey that Experian was allegedly reporting two accounts inaccurately (PNC as "charged off" and Chase as "foreclosure"), and that the inaccuracy is due to the fact that the accounts were "opened in 2007," before the March 2010 bankruptcy.

**(iv)  Mr. Letren Produced Evidence of Damages**

This Court found Mr. Letren "generated no evidence that [Trans Union] communicated any of this information to a third party." ECF 81 at 18. However, the Trans Union consumer report dated 9/8/14 includes a section for "Regular Inquiries" which states that Mr. Letren's report was requested for "credit transactions" by 12 lenders between 2/27/13 to 8/14/14. ECF 78-17 at 4-5. Thus, the alleged inaccuracies were communicated to third parties, and Mr. Letren had a good faith basis to claim he was damaged by the inaccurate reporting. Additionally, Congress included statutory damages for willful violations of the FCRA, 15 U.S.C. § 1681n(a)(1)(A), and it would be unreasonable to impute bad faith to a plaintiff with minimal actual damages when statutory damages are also available.

### LETREN'S ATTORNEY CONFIRMED THE GOOD FAITH BASIS OF CLAIMS

After filing his case *pro se*, Mr. Letren contracted an attorney who testified that he did his due diligence, conducted his own investigation of the facts, and concluded there was a good faith basis for filing the Amended Complaint against Trans Union. *See* Hearing Transcript at 16-18. The fact that a licensed attorney re-assured Mr. Letren that his claims had a valid basis in law should be considered as evidence that Mr. Letren acted in good faith in relying on his counsel.

### THE FAILURES IN THIS CASE ARE ATTRIBUTABLE TO THE ATTORNEY

It was Mr. Chapple's duty to gather the documentary evidence supporting his client's claims, to address issues raised by the opposing party, to issue subpoenas to parties in possession of relevant documents (i.e. MERS), and to determine what information he needed to meet the burden of proof necessary to prove Mr. Letren's claims. It is not the duty of the client to prepare the case, and Mr. Letren should not be punished for his previous attorney's failures to gather the documents and evidence necessary to convince this Court of the merits of his claims.

### CHASE'S LIABILITY DOES NOT SHIELD TRANS UNION FROM LIABILITY

This Court asked Mr. Chapple to explain whether the allegations against Chase in Mr. Letren's other lawsuit contradicted the allegations in this case, describing what it perceived to be "having it both ways." Rather than cite the relevant legal standards to answer that question, Mr. Chapple declared: "I'm not having it both ways. Maybe you can say that to Mr. Letren, but I'm not having it both ways." Hearing Transcript at 25:3-4. This statement makes it clear that Mr. Chapple was not providing adequate counsel to Mr. Letren, and in fact was acting against Mr. Letren's interests. Here is the simple answer that should have been provided to the Court: the FCRA imposes distinct duties on furnishers and CRAs, and the fact that a furnisher provides inaccurate information to a CRA does not shield the CRA from liability under the FCRA because the CRA has its own independent duty to investigate the dispute, and in doing so, it cannot simply "parrot" the information provided by the furnisher. *Jones v. Experian Information Solutions, Inc.*, 982 F.Supp.2d 268, 272 (S.D.N.Y. 2013) ("Although [the CRA] argues about the duties the FCRA imposes on the furnisher, at issue is not whether [the furnishers] complied with their statutory obligations, but whether [the CRA] did."). If Chase provides inaccurate information to Trans Union and Trans Union simply repeats or "parrots" that information, then Trans Union has violated its duties under the FCRA. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3rd Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."). So, by alleging that Chase provided

inaccurate information, Mr. Letren is not contracting his allegation that Trans Union failed to reasonably investigate his dispute. They are two distinct legal harms caused by two distinct violations, and he is not "having it both ways." Further, Mr. Letren did not commit a "transparent about-face" when he stated that the Chase mortgage should have been discharged, but that if Trans Union insisted the Chase mortgage had not been discharged, that there was no Chase mortgage at all. This was clearly the presentation of alternative theories as to why the reporting was inaccurate. Mr. Letren knew he took out only one mortgage with AHMA for $895,000 on 6/26/2007, and if the Chase mortgage was not related to that AHMA mortgage and was not discharged in bankruptcy, then it was not a mortgage that belonged to him. There is no bad faith in making these alternative arguments.

## CONCLUSION

Your Honor, I have endeavored with utmost sincerity and respect to comply with this Honorable Court's request for brevity in composing this supplemental opposition. Reducing my original 10 page response to a succinct 5 pages has been a great challenge. I have done my best reducing my arguments to the bare minimum without comprising my client's best interest. Should my arguments be deemed unpersuasive, I humbly request this Honorable Court grant me the opportunity to challenge the amount of the fees requested by Trans Union because there are many relevant factors which have not been briefed (i.e. amount necessary to deter conduct, precise conduct to be deterred, the reasonableness of the fees, etc.).

Respectfully submitted,

*/Quinn Lobato/*

Quinn Breece Lobato, Bar No. 18579
8583 Seasons Way, Lanham, MD 20706
(240) 305-4770
quinn.lobato@gmail.com
*Counsel for Plaintiff Neil Letren*