IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NEIL F. LETREN, <br> on behalf of himself and all others <br> similarly situated, <br> Plaintiff, <br><br> v. <br><br> TRANS UNION, LLC, <br><br> Defendant. | * <br> * <br> * <br> * <br> * Civil Action No. PX 15-3361 <br> * <br> * <br> * |

******

**MEMORANDUM OPINION**

Pending in this Fair Credit Reporting Act ("FCRA") action is Defendant's motions for sanctions pursuant to Federal Rule of Civil Procedure 11 (ECF No. 87) and for sanctions pursuant to 28 U.S.C. § 1927, 15 U.S.C. § 1681, and the inherent powers of the Court (ECF No. 88).[1] The issues are fully briefed, and the Court held a hearing on May 16, 2017, a telephonically-recorded status conference on June 12, 2017, and a second hearing on July 27,

---

[1] Section 1927 "was intended to sanction conduct Rule 11 does not reach; i.e., protracting or multiplying the litigation to run up the opposition party's costs." *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991). Section 1927 provides that a court may sanction any attorney or other person admitted to conduct cases in federal court who are unreasonable and vexatious in multiplying the proceedings. 28 U.S.C. § 1927; *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999).

The FCRA also allows for attorneys' fees to be awarded to the prevailing party upon the filing of a pleading, motion or other paper in bad faith, or for the purposes of harassment. *See* 15 U.S.C. §§ 1681n(c) & 1681o(b). This contention requires the Court to find that Plaintiff "filed an action that was frivolous, unreasonable, or without foundation." *Thomas v. Santander Consumer USA*, No. 1:11CV605, 2012 WL 263479, at *3 (M.D.N.C. Jan. 30, 2012) (quoting *Smith v. HM Wallace, Inc.*, No. 08–22372–CIV, 2009 WL 3179539, at *2 (S.D. Fla. Oct. 1, 2009)); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD–01998, 2010 WL 5147222, at *5 (W.D. Ky. Dec. 13, 2010) (citing same). "Bad faith is 'not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Shah v. Collecto, Inc.*, No. 04–4059, 2005 WL 2216242, *14 (D. Md. Sept. 12, 2005) (unpublished) (quoting Black's Law Dictionary 139 (6th ed.1990)); *see also In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (citing same bad faith definition in analysis of sanctions related to criminal complaint filing). Furthermore, this determination must focus on the plaintiff's mental state at the

1

2017. ECF Nos. 95, 107, 111. For the reasons stated below, Defendant's motion for sanctions under Federal Rule of Civil Procedure 11 and the inherent powers of the Court is granted. Any available relief under § 1927 and § 1681 would duplicate the relief granted under Rule 11 and accordingly is denied as moot.[2]

## I. BACKGROUND

This civil action stems from a mortgage loan reported by J.P. Morgan Chase Bank, N.A. ("Chase") to Plaintiff's Trans Union credit report.

### A. Pre-Filing History

According to the Amended Complaint, Plaintiff "obtained several mortgage loans in 2007, including mortgage loans being reported to his credit reports by [JPMorgan] Chase [Bank, N.A.]. . . ." (the "Chase Account"). ECF No. 22 at 5; *see also* ECF No. 22 at 5 (alleging the Trans Union credit report erroneously noted "the discharged Chase mortgage account as due and owing"); ECF No. 22 at 6 ("Both the PNC and Chase accounts were opened in 2007 and would have been included in the March 2010 Bankruptcy.").

In September of 2008, Plaintiff's property was foreclosed upon. ECF No. 78-16 at 2; *see also* ECF No. 78-1 at 40 (listing four foreclosure proceedings). On September 29, 2008,

---

time of filing. *See Rogers v. Johnson–Norman*, 514 F. Supp. 2d 50, 52 (D.D.C. 2007) ("It is not enough to show that the 'pleading, motion, or other paper' in question 'later turned out to be baseless.'" (quoting *Ryan v. Trans Union Corp.*, No. 99–216, 2001 WL 185182, at *6 (N.D. Ill. Feb. 26, 2001))).

Neither provision of the FCRA authorizes imposition of imposition of attorneys' fees on a party's lawyer, which is Defendant's requested relief. *Sipe v. Equifax Info. Servs., LLC*, No. 3:16-6103, 2017 WL 253157, at *7 (S.D.W. Va. Jan. 20, 2017) (citing *Ryan v. Trans Union Corp.*, No. 99-cv-216, 2001 WL 185182, at *5 (N.D. Ill. Feb. 26, 2001) (finding after a review of case law interpreting similar attorney's fees statutes that they have been read to permit an award against a party, not a party's attorney); *Smith v. HM Wallace*, Inc., No. 08-cv-22372, 2009 WL 3179539, at *2 (S.D. Fla. Oct. 1, 2009) (same)). Thus, to the extent the Rule 11 sanctions are insufficient in mooting Defendant's motion for attorney's fees under the FCRA, the motion is denied because Defendant's requested relief cannot be granted.

[2] *See Schnader Harrison Segal & Lewis LLP v. Hershey*, No. 112CV00928AJTIDD, 2013 WL 12099323, at *1 (E.D. Va. Aug. 14, 2013), *aff'd*, 575 F. App'x 196 (4th Cir. 2014) (finding Rule 11 sanctions warranted and denying Plaintiff relief under 28 U.S.C. § 1927).

2

Plaintiff's Trans Union consumer disclosure was updated to reflect the Chase Account as "foreclosure collateral sold." ECF No. 78-4 at 2 (September 8, 2014 Trans Union Consumer Disclosure).

On December 1, 2009, Plaintiff filed for Chapter 7 Bankruptcy. ECF No. 68 at 1; *see also In re: Letren*, Case No. 09-33378, (Bankr. D. Md. Dec. 1, 2009) ("Plaintiff's Bankruptcy Petition"). Plaintiff's bankruptcy petition included a Schedule F of accounts to be discharged in the bankruptcy and listed five accounts, including three mortgage deficiencies from American Home Mortgage Acceptance, Aurora Loan Services, and National City Mortgage. ECF No. 78-1 at 30; ECF No. 78-10 at 2. The Chase Account was not listed on the Schedule F. ECF No. 78-10 at 2.

In September of 2013, Plaintiff obtained his Trans Union credit file. ECF No. 78-16 at 3. The report showed that the Chase Account had a balance of $0.00 as of October 6, 2008 with former terms of $4,222 due monthly and the status of the account was "CBL: Chapter 7 Bankruptcy." ECF No. 78-15 at 9–11; *see also* ECF No. 78-16 at 3. Plaintiff proceeded to dispute the accuracy of the report with Trans Union, first claiming on September 16, 2013 that "the [Chase] Account should be deleted because Chase could not adequately demonstrate that it was the legal holder of the note." ECF No. 68 at 2; *see also* ECF No. 78-15 at 8; ECF No. 78-16 at 3. Then, in a series of written disputes with Trans Union over the next eleven months, Plaintiff shifted his allegation of the error—claiming on October 23, 2013 that the Chase Account was discharged in 2009 bankruptcy; on February 19, 2014 that the Chase Account was a "duplicate of his Homeward Mortgage Account"; and finally, on February 19, 2014, that the Chase Account should be reported as discharged in bankruptcy and not past due. In April 2015,

the Chase Account was automatically removed from Plaintiff's credit file because the account had been closed for seven years. ECF No. 78-15 at 4.

On July 17, 2015, Letren, and co-plaintiff Candice Alston filed an amended class action complaint through counsel Kevin Chapple ("Chapple") against Experian. *See Letren v. Experian Information Solutions, Inc.*, No. 8:14-cv-03957-TDC (D. Md.). The allegations against Experian Information Solutions, Inc. rely in part on the misreporting of Letren's Chase Account— claiming that the Chase Account, among other mortgage accounts, was erroneously reported as due and owing and not in bankruptcy. The Amended Complaint also contends the Chase Account was a duplicate of an account reported by Homeward Residential. *See Letren v. Experian Information Solutions, Inc.*, ECF No. 15 at 5 n.3. As to the purported error in Ms. Alston's consumer report, she explicitly maintained that she did not have a mortgage account with Wells Fargo and that Wells Fargo did not own or service the account. *Id.* at 2.

### B. The Instant Civil Action

Almost three months later, on October 6, 2015, Plaintiff Neil F. Letren ("Plaintiff" or "Letren"), proceeding *pro se*, filed a class action complaint against three consumer reporting agency ("CRA's")—Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union for alleged violations of the FCRA. ECF No. 2.[3]

The Complaint asserts that Trans Union falsely reported the Chase Account as due and owing when the Chase Account was discharged in bankruptcy. The Complaint provides no allegations of a duplicate account—specifically, no allegations involving Homeward Residential, or a third mortgage loan company, AHMA.

---

[3] On November 3, 2015, Defendants timely removed the action from in the Circuit Court for Montgomery County to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. ECF No. 1.

Chapple then entered his appearance in the instant action for Letren on November 16, 2015. ECF No. 12. Several weeks later, Chapple filed on behalf of Plaintiff an amended class action complaint (the "Amended Complaint"). ECF No. 22. The Amended Complaint maintained both class and individual claims, alleging that Defendant Trans Union violated 15 U.S.C. § 1681e(b) (Count I and II) and 15 U.S.C. § 1681i(a) (Count III and IV) of the FCRA. ECF No. 22. Prior to filing the Amended Complaint, Chapple did no due diligence on whether class claims were viable. Nor did Chapple timely pursue written discovery on the class allegations. Further, Chapple did nothing to prepare Letren as to the responsibilities of a named plaintiff in a class case, nor is there any evidence that Chapple has any experience as class counsel.

With regard to Plaintiff's individual claims, the Amended Complaint specifically alleged that the Chase Account not only existed as of 2007, but was discharged in his 2009 bankruptcy. The Amended Complaint unambiguously faults Trans Union for inaccurately reporting the Chase Account as due and owing instead of discharged in bankruptcy. *See* ECF No. 22 at 5, 8. The Amended Complaint further complained that Trans Union failed to perform a reasonable investigation into Letren's disputes and instead continued to report the Chase Account inaccurately. ECF No. 22 at 6. Importantly, at no place in the original Complaint, the Amended Complaint, or for several months thereafter in discovery did Plaintiff deny the Chase Account's existence. Rather, his main contention was that had Trans Union done its due diligence in reviewing Letren's bankruptcy petition, it should have reported the Chase Account as discharged rather than due and owing. *See generally* ECF No. 22 at 4.

From the beginning of this case, Trans Union vigorously disputed the veracity of Plaintiff's claims. Repeatedly, Trans Union pressed Plaintiff, through counsel, for any

5

documentary evidence demonstrating that the Chase Account had been discharged in bankruptcy. Trans Union was either met with silence or marginally comprehensible excuses. *See generally* ECF Nos. 88-2 to 88-8. At no point did Letren or his attorney, Chapple, produce any documentary proof supporting Plaintiff's allegations.

Given Letren's failure to provide any evidentiary support for his claims, Trans Union once again, on January 28, 2016, emphasized that Plaintiff's position is specious and that he should dismiss his case rather than face a motion for sanctions. *See* ECF No. 88-6. Met once again with silence, on March 1, 2016, Trans Union formally notified Letren in writing that pursuant to Rule 11, it would seek sanctions should Letren refuse to dismiss his case within twenty-one days from receipt of the letter. ECF No. 88-7 at 2. Letren once again refused to dismiss his case.

Then in June of 2016, Letren changed his story in his deposition. Letren testified that he never had a Chase Account and the real error was Trans Union reporting the account at all. ECF No. 78-8 at 23, 37. Letren and Chapple maintained this new position despite Trans Union having proof that Chase had repeatedly verified the existence of the mortgage account and that it had been closed prior to Letren filing for bankruptcy. *See* ECF No. 78-15 at 2–38.

After a failed settlement conference where Trans Union again hoped to impress upon Letren the need to dismiss his action, Trans Union moved for summary judgment, arguing *inter alia* that Trans Union had accurately reported the Chase Account as due and owing. *See generally* ECF No. 66. Defendant further moved for summary judgment as to the class allegations because Plaintiff had done nothing to advance those claims. *Id.* Plaintiff not only filed a formal opposition, but separately cross-moved for summary judgment. In both pleadings, Plaintiff persisted in his new argument that he did not hold a Chase Account at all, and even

argued that it was Trans Union's burden to show that the Chase Account in fact existed. ECF No. 71 at 1.

On February 2, 2017, the Court granted Trans Union's motion for summary judgment, denied Plaintiff's motions, and dismissed Plaintiff's remaining claims.[4] The Court concluded that Plaintiff had failed to put forth any evidence that (1) the Chase Account was reported inaccurately, (2) an inaccurate consumer report was disclosed to a third party, or (3) that Trans Union's procedures or reinvestigation process were unreasonable in any way. Specifically, the Court noted:

> Plaintiff proffers no evidence that the Chase Account was discharged in the bankruptcy proceedings . . .
>
> In a transparent about-face, Plaintiff now claims in his June 17, 2016 deposition and September 2016 declaration that he never opened an account with Chase or held a mortgage with Chase, and that the real inaccuracy at issue is reporting the Chase Account at all. ECF No. 78-16 at 3; Deposition of Neil Letren, ECF No. 78-8 at 23. Plaintiff offers no explanation for why he asserted the exact opposite in his Complaint, his Amended Complaint, and throughout the life of this case. This eleventh hour assertion is especially suspect in light of Chase's repeated verifications of the account's existence. Ultimately, Plaintiff's unsupported and bare bones allegations will not defeat summary judgment. *See Angel Med. Ctr., Inc. v. Abernathy*, 1 Fed. App'x. 217, 218 (4th Cir. 2001) (finding plaintiff "presented no evidence of such an accord apart from his own bald and self-serving allegations, which contradict his previous response to an interrogatory and are insufficient to avoid summary judgment") (citing *White v. Boyle*, 538 F.2d 1077, 1080 (4th Cir. 1976)) . . . .

Memorandum Opinion, ECF No. 81 at 14–15. In sum, the Court dismissed the action because Plaintiff failed to proffer any evidence supporting the elements of his claims other than his own self-serving declaration. *See generally* ECF No. 81 at 15.

---

[4] During the course of litigation, the claims against the other two defendants, Experian Information Solutions, Inc. and Equifax Information Services, LLC, were dismissed (ECF Nos. 59, 60), and the only remaining defendant at the summary judgment stage was Trans Union.

Following the Court's ruling, Trans Union filed the instant motion for sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927; 15 U.S.C. § 1681, and the inherent powers of the Court. Trans Union contends that sanctions are warranted because Plaintiff pursued claims in the face of its repeated warnings that the claims were factually baseless. Trans Union particularly warned Plaintiff at least six times of his precarious position as well as penned a Rule 11 letter. *See* ECF No. 88-1 at 2–3. Plaintiff having not heeded Trans Union's entreaties to dismiss the action, now must answer to Trans Union's motion.

In response, Plaintiff, through Chapple, offered yet a wholly new theory of liability: that the Chase Account is the same as his American Home Mortgage Account that had been included in Letren's 2009 bankruptcy.[5] ECF No. 91 at 3. Then, following dismissal of Chapple as Letren's counsel and the entrance of Quinn Lobato ("Ms. Lobato") as plaintiff's counsel, ECF No. 100, Ms. Lobato offered a final theory of liability—that the duplication of the trade line on the Trans Union consumer report was due to Chase's status not as a purported noteholder, but rather as a loan servicer.

## II. DISCUSSION

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, a defendant may recover reasonable attorney's fees and costs when a plaintiff continues to pursue unsupported claims. *Davis v. Target Stores Div. of Dayton Hudson Corp.*, 87 F. Supp. 2d 492, 494 (D. Md. 2000). "The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Cty., Inc.*, 474 F. App'x 947, 950 (4th Cir. 2012) (citing *Cabell v. Petty*, 810 F.2d 463, 467 (4th Cir. 1987)

---

[5] Plaintiff's attempt to re-litigation his previously-rejected claims is improper, as sanctions motions are not the appropriate vehicle for re-litigating the merits of a case. *See Broughton v. McClain*, No. 5:13-CV-00454-H, 2014 WL 11497896, at *1 (E.D.N.C. Dec. 10, 2014), *aff'd*, 602 F. App'x 133 (4th Cir. 2015). Even so, Plaintiff has failed to put forth any evidence to support this new assertion.

(requiring the district court to impose sanctions on remand "that will serve the essential goal of education and deterrence underlying Rule 11")).

Where a sanction is warranted, the Court must consider: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990) (citing *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir. 1990)); *accord Davis*, 87 F. Supp. 2d at 495. The sanctions here must at once deter future frivolous filings but not be so excessive as to discourage other plaintiffs with deserving claims from filing their cases for fear of incurring fees if they lose. *Davis*, 87 F. Supp. 2d al 496; *see also Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Accordingly, and for the reasons stated below, the Court will assess a sanction of $ 4,000 against Chapple and $ 200 against Letren.

**1. The Severity of the Alleged Misconduct**

The Court begins by assessing the severity of the misconduct in this case. Letren initiated this action by filing a pro se class action complaint. Although Letren began this litigation pro se, Chapple soon entered his appearance on Plaintiff's behalf and filed an Amended Complaint. Accordingly, under Rule 11, both Plaintiff and Chapple were required to conduct a reasonable investigation into the factual and legal bases of the claims. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991); *Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir. 1990) ("[Rule 11] imposes 'a duty to conduct a pre-filing examination of both the facts and the law before instituting legal process.'") (citation omitted).[6] By filing a pleading such as the Complaint and Amended Complaint in this court, an attorney or unrepresented party represents,

---

[6] A court may sanction an attorney for taking a baseless legal position when, "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)) (quotation marks omitted).

9

among other things, that "the factual contentions have evidentiary support" or that "the denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b).

In determining whether a complaint is well grounded in fact, "[a]n objective test is used to determine the reasonableness of a lawyer's prefiling investigation." *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990) (quotation omitted). Rule 11(b)(3) is violated when such allegations "are 'unsupported by *any* information obtained prior to filing.'" *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Brubaker*, 943 F.2d at 1373); *In re Kunstler*, 914 F.2d at 515 ("While a lawyer may rely on discovery to reveal *additional* facts to support claims which are well grounded in fact, Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support."). Thus, to avoid sanctions, an "allegation merely must be supported by *some* evidence." *Brubaker*, 943 F.2d at 1377 (emphasis in original). "If a reasonable inquiry would have demonstrated the client's assertions were untrue, or if other relevant documents and witnesses are readily available, it is unreasonable for counsel to rely exclusively on his client for factual support." *Obifuele v. 1300, LLC*, 2006 U.S. Dist. LEXIS 60043, *21–22 (D. Md. Aug. 23, 2006) (citing *Lloyd v. Schlag*, 884 F.2d 409, 412–3 (9th Cir. 1989) (sanctions are appropriate where counsel solely relied on client's allegations to support award of fees when an investigation into accessible records would have uncovered that client did not have a cause of action); Georgene M. Vario, *Rule 11 Sanctions: Case Law, Perspective and Preventive Measures* at 314 (3d ed. 2004) ("[I]f an attorney fails to review relevant documents in the public record or available to the client, or if an attorney fails to interview witnesses, most courts will sanction the attorney.")).

"Inexperienced or incompetent attorneys are not held to a lesser standard under Rule 11." *Brubaker*, 943 F.2d at 1373. Nor will a party's status as a pro se litigant preclude sanctions

under Rule 11. *See Abbott v. Suntrust Mortgage, Inc.*, 2009 WL 971267, *4 (E.D. Va. Apr. 8, 2009) ("Litigants proceeding pro se are liable for sanctions under Fed. R. Civ. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support."). Further, the Court's inherent power to manage its own affairs allows the "fashion[ing of] an appropriate sanction for conduct which abuses the judicial process" including awarding attorneys' fees. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Colbert v. Yadkin Valley Tel. Membership Corp.*, 960 F. Supp. 84, 86 (M.D.N.C. 1997). "A court may invoke its inherent powers to assess attorney fees against a party . . . 'where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Nasser v. WhitePages, Inc.*, No. 5:12-CV-00097, 2014 WL 1323170, at *6 (W.D. Va. Apr. 1, 2014) (quoting *Strag v. Bd. of Trustees, Craven Community College*, 55 F.3d 943, 955 (4th Cir. 1995)). A party has acted in bad faith if he or she "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (quoting *Gwynn v. Walker* (*In re Walker*), 532 F.3d 1304, 1309 (11th Cir. 2008) (per curiam)).

Sanctions against Letren are warranted for failing to conduct any reasonable pre-filing investigation. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410–11 (4th Cir. 1999) ("A complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions."). In fact, Letren's Complaint was contradicted by his own allegations both in his pre-filing dispute with Trans Union and in statements that he made in the case pending before this Court. Letren's initial pro se complaint, alleging that the Chase Account should have been reported as discharged, contradicted his own initial pre-filing dispute with Trans Union that Chase was not a holder of the mortgage note. And while Letren now contends he attempted to

plead the non-existence of the Chase Account in his initial Complaint, this is precisely the theory that his co-plaintiff Ms. Alston pled in their joint complaint against PNC—a theory that Letren did not adopt as to his Chase Account in the PNC litigation and failed to plead in his Complaint. Plaintiff's later deposition testimony without any evidentiary support of the theory that this Chase Account does not exist, *see* ECF No. 78-8 at 23, 26, is further indicative of a complete lack of pre-filing inquiry.

To further compound the ever-changing liability theories, Letren now alleges through new counsel that Chase was the prior loan servicer of the mortgage; a fact never before provided to the Court or to Trans Union. Indicating the ease of the minimal factual inquiry that Letren could have and should have performed before filing his Complaint, Plaintiff's own counsel, Ms. Lobato, provided the Court with the MERS service search identifying Chase as the loan servicer and a Substitute Trustees' Deed executed by the noteholder Wells Fargo supporting that Chase was not the noteholder. *See* Letren Exhibit Nos. 1 and 3, July 28, 2017 Sanctions Hearing (on file with the Court). Letren has failed to offer any reasonable basis or pre-filing inquiry supporting the filing of his initial Complaint in which he alleges the Chase Account should have been discharged in bankruptcy.

Sanctions are also warranted against Chapple because Chapple should have determined, with minimal due diligence, that Plaintiff's allegations lacked factual basis. *See Chaudhry*, 174 F.3d at 410–11. According to Chapple, the extent of his factual inquiry included a search in the D.C. Recorder of Deeds that bore no evidence, *see* May 16, 2017 Hearing Transcript, ECF No. 110 at 17–18, speaking with Letren, *see* July 27, 2017 Hearing Transcript, ECF No. 114 at 75–76 & 86, and inappropriate legal advice from Thomas Alston, May 16, 2017 Hearing Transcript, ECF No. 110 at 28–29, a non-attorney third party with a history of filing frivolous litigation in

this Court.[7] Indeed, Plaintiff, through counsel, "proffer[ed] no evidence that the Chase Account was discharged in the bankruptcy proceedings" and no evidence of any inaccuracy in Trans Union's reporting of the Chase Account. Memorandum Opinion, ECF No. 81 at 14. Yet, Chapple persisted in the face of repeated requests to dismiss the baseless Amended Complaint.

Instead of doing so, Chapple filed a Cross-Motion for Summary Judgment claiming that the Chase Account did not exist, ECF No. 71, despite Chase verifying repeatedly not only that the account indeed existed, but had been foreclosed upon. Switching out one baseless allegation for another does not constitute due diligence. *See Obifuele*, 2006 U.S. Dist. LEXIS 60043 at *8–9 (citing *Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761 (4th Cir. 2003) (award of fees to defendant was not an abuse of discretion when discrimination claims lacked any foundation in the record apart from her own conclusory assertions); *Gilyard v. South Carolina*, 667 F.Supp. 266, 277 (D.S.C. 1985) (award of attorneys' fees was appropriate where only evidence presented was "[t]he plaintiff's belief that he was the victim of discrimination")).

Further, Chapple had substantial opportunities to abandon this case once confronted with the falsity of Letren's claims starting in January 2016—specifically the multiple occasions where Trans Union demonstrated that Plaintiff's bankruptcy filings included no reference to any account with Chase.[8] Yet, Chapple persisted without evidence and without a legitimate theory

---

[7] Thomas J. Alston has been plaintiff in approximately eighteen FCRA cases in this Court (8:11-cv-02292-RWT, 8:12-cv-00670-RWT, 8:12-cv-00721-RWT, 8:12-cv-01708-AW, 8:12-cv-01819-AW, 8:12-cv-03589-AW, 8:12-cv-03671-AW, 8:12-cv-03745-AW, 8:13-cv-01232-PWG, 8:13-cv-01226-PWG, 8:13-cv-01598-PJM, 8:13-cv-01704-RWT, 8:14-cv-03199-DKC, 8:15-cv-03099-TDC, 8:15-cv-03393-DKC, 8:16-cv-00491-GJH, 8:16-cv-00491-GJH, 8:16-cv-00608-TDC). Alston, a non-attorney, has not only been among the named pro se plaintiff but also provides draft complaints and the applicable law to other prospective pro se plaintiffs. May 16, 2017 Hearing Transcript, ECF No. 110 at 89, 93, 95. Many of these complaints seek monetary compensation for trivial harms, such as the alleged failure to promptly receive a mortgage note marked "paid" when it has been paid in full. *See e.g.*, *Alston v. Wells Fargo Bank, N.A.*, 2016 WL 4158369 (D. Md. Aug. 5, 2016).

[8] Defendant then served Plaintiff's counsel with its Motion for Rule 11 Sanctions on March 1, 2016 in compliance with Rule 11's twenty-one-day "safe harbor" period, which exists to "provide immunity

supporting Plaintiff's case. Letren then raised his conflicting allegation that he never had a Chase Account at his June 2016 deposition, *see* ECF No. 78-8 at 23, 26, and yet Chapple never withdrew or sought to amend the Amended Complaint.

Moreover, Chapple doubled-down on these conflicting allegations by filing a cross-motion for summary judgment without any evidentiary support. *See Brubaker*, 943 F.2d at 1382 n.24 ("A paper signed and filed in opposition to a motion for summary judgment when development of the facts has made it clear that summary judgment must be granted, for example, will violate Rule 11."); *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 550 (4th Cir. 1990) (holding that sanctions were warranted when "the parties and counsel pressed on a massive scale insubstantial claims unsupported by any credible evidence . . . in an effort to harass the defendant"); *id.* at 543 (explaining that "counsel cannot simply rely on a client's patently incredible testimony when any reasonable investigation of the factual bases for the client's claims or examination of materials obtained in discovery would reveal the paucity and implausibility of the evidence").

Now facing sanctions, Chapple floats yet another explanation—that the Chase Account is really another account that was indeed discharged in bankruptcy and sought a subpoena for Letren's own settlement agreement with Chase. ECF No. 92. In no way does this help Chapple. *See* Fed. R. Civ. P. 11(b)(3); *cf. Chalmers v. Petty*, 136 F.R.D. 399, 406 (M.D.N.C. 1991) (finding "plaintiffs' request to reopen discovery lacks an arguable basis in fact or law. In such a situation, Rule 11, Fed. R. Civ. P., mandates that the Court impose sanctions." (citing *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F.2d 953 (4th Cir. 1990))).

---

from sanctions to those litigants who self-regulate by withdrawing potentially offending filings or contentions." *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 251 (4th Cir. 2001) (citing Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)).

In short, Plaintiff's Amended Complaint, response to Defendants' Motion for Summary Judgement and his own Cross-Motion for Summary Judgement lacked a good faith factual justification, warranting sanctions for Chapple. Nor is there any evidence that Letren conducted an objectively reasonable investigation for his claims prior to pursuing them. Finally, despite Defendant's repeated entreaties for Plaintiff to produce such evidence or else face a motion for Rule 11 sanctions, Plaintiff ignored them. For all of these reasons, the nature and severity of the misconduct counsels strongly in favor of significant sanctions. *See Brubaker*, 943 F.2d at 1373.

**2. The Reasonableness of Defendant's Requested Attorneys' Fees**

In deciding whether an attorney's fee is reasonable, the Court must consider the twelve factors that the Fourth Circuit Court of Appeals set forth in *Barber v. Kimbrell's Inc.* to the extend such factors are applicable. 577 F.2d 216 (4th Cir. 1978).[9] Here, the Court accepts that counsel is experienced, able and skilled in this particular litigation. Further, the attorneys' hourly rate of $175.75 per hour is reasonable and appropriate. However, when considering that this case is hardly novel or complex, the number of defense hours expended – 325 – seems disproportionately high. For example, in a case that rose or fell on whether Trans Union misreported one mortgage account should not require thirty hours to prepare a motion to compel that was never filed; or eighty-two hours (or two full work weeks) to draft the summary judgment pleadings. At bottom, Trans Union's request for such reimbursement of hundreds of attorney hours runs counter to their claim that Plaintiff's lack of candor was simple,

---

[9] These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2d at n. 28.

straightforward and obvious. Accordingly, these factors counsel in favor of reducing the proposed attorneys' fee.

### 3. Minimum Sanction to Deter Future Misconduct

Importantly as to this factor, Rule 11 is not a fee shifting provision. Rather, it is designed to mete out punishment for pursuing baseless claims without chilling future litigants. *In re Kunstler*, 914 F.2d at 522 (Rule 11 sanctions "should not blindly be used to shift fees."). When determining the sufficiency of a monetary sanction to deter future misconduct the court considers: (1) whether the conduct was willful or negligent; (2) whether it was part of a pattern of, or similar to, conduct in other litigation, or an isolated event; (3) whether the sanctionable conduct affected the entire case or only one particular count or defense; (4) whether the conduct was intended to injure; (5) what effect the conduct had on the litigation process in time or expense; and (6) whether the responsible person is trained in the law. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

Here, Letren and Chapple purposely persisted in maintaining that the Chase Account had been discharged in bankruptcy only to inexplicably reverse course and claim that the Chase Account did not exist at all. Then, over a year after the instant litigation, Letren filed a separate but related case against Chase itself, now claiming anew that the Chase Account existed and was improperly categorized as closed due to foreclosure. *See Letren v. JPMorgan Chase Bank, N.A.*, 8:16-cv-03520-PX. What is worse, Letren and Chapple pursued this case in the face of Chase repeatedly verifying for Trans Union that the account existed and was closed as due and owing before Letren filed bankruptcy.

Additionally, these misrepresentations permeated the case from its inception and prolonged the litigation. This case remained open for eighteen months. From the beginning,

Trans Union pressed Letren and counsel to produce evidence supporting his position or dismiss the case. Letren and Chapple stubbornly persisted, thereby delaying the inevitable dismissal of the case and causing Trans Union to expend unnecessary resources in both time and money.

Further, Chapple is no stranger to representing plaintiffs in FCRA lawsuits before this Court and is thus familiar with the legal process generally and what specifically is required to sustain an FCRA case. *See Letren v. Experian Information Solutions, Inc.*, Case No. 8:14-cv-03957-TDC; *Alston v. Transunion, LLC et al.*, Case No. 8:14-cv-01180-TDC; *Alston v. Equifax Information Services, LLC et al.*, Case No. 8:15-cv-03343-TDC; *Alston v. Equifax Information Services, LLC*, Case No. 8:13-cv-01230. At a minimum, Chapple's involvement in these cases had educated him to the perils of pursuing frivolous claims and the requirements to sustain meritorious ones.

Similarly, Letren has filed serial complaints—both class and individual actions—on a pro se basis for years. *See Letren v. Walter Investment Management Corp. et al.*, 8:15-cv-00621-TDC; *Letren v. Arch Bay Holdings, LLC et al.*, 8:15-cv-00622-GJH; *Letren v. NASA Federal Credit Union et al.*, 8:16-cv-03226-GJH; *Letren v. PNC Bank, N.A.*, 8:16-cv-03780-PJM; *Letren v. Aurora Loan Services, LLC*, 8:16-cv-03515-TDC; *Letren v. Divine & Service, Ltd*., 8:16-cv-03504-PJM. All but two complaints bring FCRA violations on strikingly similar grounds against credit reporting companies and lending institutions alike. Letren's conduct as a serial filer is even more concerning when considering his testimony under oath that he knew very little about class actions, his role as a class representative, or the reason he would file a class complaint as opposed to an individual action. ECF No. 78-8 at 19–21. And even after testifying to his lack of knowledge, Letren filed a pro se class action complaint against Chase, while this litigation was pending. *See Letren v. JPMorgan Chase Bank, N.A.*, 8:16-cv-03520-PX. His history as a

frequent filer in this Court, combined with the ease with which he contradicted his complaint allegations with sworn testimony, merits sanctions against him individually. *See Instant Tax Service v. TCA Financial*, PJM 08-2364, 2009 WL 2579806 (D. Md. Aug. 17, 2009) at *4 (imposing sanctions on plaintiff where she was "clearly involved in the preparation of her filings and in fact signed an affidavit directly contradicting her sworn arbitration positions, which substantially contributed to the violation.").

### 4. Ability to Pay

Finally as to ability to pay, the record reflects that Plaintiff currently can afford this sanction. Plaintiff receives an annual gross income of over $100,000, possesses minimal debt, and owns real property with no mortgage note attached to the property. *See* ECF No. 115; ECF No. 78-8 at 10. Chapple, by contrast, has put forward no evidence on his ability to pay and so has waived any argument to the contrary. *In re Kunstler*, 914 F.2d at 524 ("Although the burden is upon the parties being sanctioned to come forward with evidence of their financial status, a monetary sanction imposed without any consideration of ability to pay would constitute an abuse of discretion."); *accord Salvin v. Am. Nat'l Ins. Co.*, 281 Fed. App'x. 222, 226 (4th Cir. 2008) (unpublished) (per curiam) (citing *Kunstler* with approval in § 1927 context); *accord Dillon v. BMO Harris Bank, N.A.*, No. 1:13-CV-897, 2017 WL 564501, at *5 n.3 (M.D.N.C. Feb. 10, 2017).

Accordingly, the Court will impose sanctions of $ 200 on Letren and $ 4,000 on Chapple, each to bear its own sanction. *See Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1186 (10th Cir. 1985) ("Rule 11 directs that the sanction should fall upon the individual responsible for the filing of the offending document. In a given case this could be the attorney, the client, or both."); *White v. Creditors Serv. Corp. (In re Creditors Serv. Corp.)*, 207 B.R. 567, 570 (Bkrtcy. S.D. Ohio

1997) ("Sanctions can be levied on the attorney as the signer of the pleading, the client as the catalyst behind the pleading, or both, based on the allocation of appropriate culpability."); *cf. Cirino v. Federal Express Corp.*, 1995 WL 489435 (S.D.N.Y. 1995) (sanctioning plaintiff and not his counsel where the court found counsel was "entitled to rely on the information provided by his client"). Partial reimbursement of Defendant's attorneys' fees in the amount of $ 4,200 is sufficient to deter Plaintiff and counsel from future similar conduct and is no more than necessary. Fed. R. Civ. P. 11(c); *In re Kunstler*, 914 F.2d at 524. Plaintiff's repeated baseless allegations, the lack of any meritorious claims, the filing of a class action that he never pursued; the persistence of his position in the face of repeated warnings that sanctions will follow; the factual about-face that he took under oath at his deposition then pleading the precise opposite in a related lawsuit filed only months later; and pursuing his own cross-motion for summary judgment—all of which rendered this litigation unnecessarily protracted—weigh in favor of a significant sanction. Plaintiff's misconduct, with the assistance of Chapple, infected the entire course of litigation. Thus, based on the all the facts and circumstances, the Court concludes that an appropriate sanction is Defendant's attorneys' fees in the amount of $ 4,200.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Trans Union's Motion for Sanctions pursuant to Rule 11 and the inherent powers of the Court, and awards Trans Union $ 4,200 in sanctions, jointly and severally against Plaintiff Neil F. Letren and Plaintiff's counsel, Kevin L. Chapple. A separate Order will follow.

| 9/15/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |